Gulf Colorado & Santa Fe Railway Company v.
M. S. Johnson et al.

No. 4.

1. **Damages for Injury Causing Death—Excessive Verdict.**—J. was a brakeman in the employ of a railway company; was 29 years old, of good health and morals, and was industrious; had been four years in such service: was a good average brakeman, without special education or business qualifications, and was earning about $65 per month. He was killed in an accident resulting from ordinary negligence on the part of the company in not keeping its roadway in proper condition. *Held*, that a verdict for $18,000 in favor of his wife and only child, 2 years old, was excessive.

2. **Same—Railway Company Liable to Employe for Ordinary Negligence, when.**—Even prior to the amendment of our statutes on the subject, a railway company was liable in this State to its employes for damages arising from ordinary negligence in failing to keep its roadway in repair. The negligence need not be gross; nor will negligence be imputed to the employe where it has reference to the condition of the roadbed and track.

Appeal from Johnson. Tried below before Hon. J. M. Hall.
The opinion states the case.

*J. W. Terry* and *Smith & Davis*, for appellant.—1. The verdict is excessive, as the appellees could only recover in this case the actual pecuniary injury which they sustained by the killing of A. D. Johnson. Railway v. Cowser, 57 Texas, 293; March v. Walker, 48 Texas, 375; Railway v. Nixon, 52 Texas, 19; Sayles' Civ. Stats., art. 2209; Railway v. Gordon, 70 Texas, 88; Railway v. Ormond, 64 Texas, 490; Railway v. Dorsey, 66 Texas, 154; Railway v. Lee, 70 Texas, 496; Railway v. Bayfield, 37 Mich., 205; Rose v. Railway, 39 Ia., 255; Illinois, etc., v. Weldon, 52 Ill., 290; McIntyre v. Railway, 47 Barb., 515; Railway v. Smith, 6 Heisk., 174; Railway v. Singleton, 66 Ga., 252.

2. A railway company, prior to the 4th day of July, 1887, was liable in an action for death only for the gross negligence of its servants or employes. Sayles' Civ. Stats., art. 2899, and note; Railway v. Hill, 9 S. W. Rep., 351; Railway v. Scott, 66 Texas, 565; Hendrick v. Walton, 69 Texas, 195; Railway v. Cowser, 57 Texas, 306; Cotton Press v. Bradley, 52 Texas, 600; Railway v. Hanks, 73 Texas, 323; Railway v. Halloren, 53 Texas, 46.

*Poindexter & Padelford*, for appellees.—1. The verdict is not excessive. The amount of damage is a fact peculiarly within the province of the jury to decide. Rev. Stats., art. 2909; Railway v. Ormond, 64 Texas, 485; Railway v. Kindred, 57 Texas, 502; Brickman v. Railway, 8 S. C., 173; Collins v. Council Bluffs, 32 Ia., 331; 60 Texas, 530; Phillips v. Railway, 42 L. T. Rep. (N. S.), 6; Robinson v. Railway, 48 Cal., 409;

Railway v. Paulk, 24 Ga., 362; Harrold v. Railway, 24 Hun, 184; Berg v. Railway, 50 Wis., 419; Tilley v. Railway, 29 N. Y., 252; Railway v. Weightman, 39 Gratt., 431; Railway v. Keller, 67 Pa. St., 300; Beeson v. G. M. G. M. Co., 57 Cal., 37; Railway v. Cutter, 19 Kan., 91.

2. It is a personal duty which a railway corporation owes to its employes traveling in the discharge of their duty upon its trains to supply a proper roadbed and track and keep them in repair; and where a defect therein could have been remedied by ordinary care and diligence on the part of the corporation, it will be responsible in damages for injury resulting therefrom, and can not escape the consequences by attributing the injury to the negligence of its agents and employes. Railway v. Dunham, 49 Texas, 189; Eames v. Railway, 63 Texas, 663; Railway v. McNamara, 59 Texas, 256; Railway v. O'Hare, 64 Texas, 600; Railway v. Whitmore, 58 Texas, 276; Railway v. Kirk, 62 Texas, 231; Railway v. Herbert, 106 U. S., 646; Hough v. Railway, 100 U. S., 213; Chicago et al. v. Swett, 45 Ill., 197; Elmer v. Locke, 135 Mass., 576; Fore v. Railway, 110 Mass., 240; Kirkpatrick v. Railway, 79 N. Y., 240; Flike v. Railway, 53 N. Y., 550; Brown v. Railway, 53 Iowa, 595; Railway v. Welch, 52 Ill., 186; Railway v. Patterson, 69 Ill., 650; Railway v. Halloren, 53 Texas, 53; Davis v. Railway, 11 Am. and Eng. Ry. Cases, 173; Patterson v. Railway, 76 Pa. St., 393.

HEAD, ASSOCIATE JUSTICE.—On January 22, 1887, A. D. Johnson, while in the discharge of his duty as brakeman for the appellant, was killed by the derailment of the car upon which he was riding, caused by a defective stock gap in appellant's track between Cleburne and Alvarado, in Johnson County. At the time of his death the said Johnson was 29 years old and in good health; was a man of good morals, industrious and attentive to his business, and had a life-expectancy of 36.03 years. He had been working for himself ever since he was 18 years old, but had accumulated no property, everything he made going to the support of his family. At the time of his death he had been in the employ of appellant as brakeman for about four years, and was earning either $60 or $65 per month. He had been married eight years to appellee M. S. Johnson, and had one child, the appellee Murdie Lea Johnson, a boy, aged 2 years at the time of the death of his father as aforesaid. Upon one occasion during his employment with appellant the said A. D. Johnson had been employed as passenger conductor on one of its trains for one or two trips, and upon one trip had acted as baggage master. He does not seem to have been a man of any special education or business qualification, but was a good average brakeman. The verdict was in favor of appellees for $18,000, to be divided equally between them. The verdict established ordinary negligence on the part of appellant, and in this respect was well supported by the evidence.

We have examined the record in this case with much care, and have been forced to the conclusion that the verdict for $18,000 is excessive and should be reversed. We realize the difficulty that necessarily attends the assessing of the amount of damage to be allowed in this class of cases, and for this reason the verdict of the jury should be entitled to more than ordinary weight. At the same time the law allows such damage to be estimated only upon the basis of pecuniary compensation, and demands that all considerations of sympathy and passion be excluded. It is true in arriving at this pecuniary compensation, in many cases there is much to be taken into consideration beside the actual money contributed by the deceased to those entitled to sue. The circumstances in many cases will justify a finding that, had not death prevented, promotion in his line of business, with increased earnings, would have resulted in increased contributions by deceased to those dependent upon him, and in such cases the jury would be authorized to take this into consideration in arriving at the amount of their verdict. In other cases the evidence may show that deceased was in the habit of rendering to those claiming damages for his death other valuable services beside contributions in money, and in such cases the probabilities as to this being continued in future, had not death resulted, could be weighed by the jury. A husband might and usually does render to the wife much valuable aid outside of his earnings in money, of which she is deprived by his death; and the jury, should it see proper, has the right to compensate her for this loss according to the circumstances of the particular case. A child, and especially a very young boy, is deprived of much that would be of value to him by the death of a father who, had he lived, would have contributed to his comfort, assistance, education, and training in many ways in addition to the actual money he would have furnished, and should a jury give reasonable compensation for this loss no just complaint could be made. 3 Wood's Ry. Law, 1539, 1540; Pierce on Rys., 397–399.

But in all these cases the jury must be reasonable. They must not allow their sympathy or passion to carry them beyond the pecuniary compensation allowed by law. In the case before us the jury has allowed each of the appellees a sum of money which, at the current rate of interest, would annually yield a sum considerably in excess of the total wages deceased was earning at the time of his death. That each of them could not expect to receive the full amount of his earnings is plain from the evidence, both being entirely dependent thereon. In fact, both together could not expect to receive all of such earnings, because the evidence shows that the deceased had no property, and it was necessary for his own maintenance to be taken from his wages. It will thus be seen that the jury in fixing the compensation to be allowed appellees have estimated the incidental services deceased may have been expected to render his wife and child at a sum very greatly in excess of the assistance he was

able to render them through his regular employment, and without deciding that this might not be justified in some cases, we can find nothing in the record to sustain their conclusions as applied to this case.

Deceased is not shown to have been possessed of any special qualifications to make his prospects of promotion peculiarly bright and rapid, or his incidental services more than ordinarily valuable, and we can not sustain a verdict which in effect finds that the services an ordinary brakeman renders his wife and child during the brief intervals he is able to be with them from his work is of so much greater pecuniary value to them than the amount he earns in his regular employment, even when we take into consideration the usual chances of promotion. The amount given the child Murdie Lea Johnson by the verdict in this case, if kept at interest at the current rate, would produce a sum sufficient to support and educate him in the very best schools during his minority and at his majority start him in business with a fortune of at least $10,000; a result, we feel constrained to hold, he could not have reasonably anticipated had his father lived.

The court in several paragraphs of the charge to the jury used expressions which if standing alone might have been construed as requiring appellant to furnish a *safe* roadbed and track for the use of its employes. It is well settled in this State that ordinary care in this respect is all that is required of the master for the protection of his servants, and the use of the word "safe" in this connection has been several times condemned by our Supreme Court. Railway v. Williams, 82 Texas, 343; Railway v. Wells, 81 Texas, 685. It is unnecessary for us to decide whether the whole charge taken together in this case was objectionable in this respect or not, and we only call attention to it in view of another trial.

Appellant earnestly contends, that if the death of Johnson was caused by one of its cattle guards being out of repair, and this was the fault of its employes, it would only be liable for gross negligence, the death having occurred prior to the amendment of our statute upon this subject. The court, however, tried the case upon the theory that ordinary negligence would render appellant liable, and with this view of the law we fully concur. There are certain duties devolved upon the master as a personal obligation for which he is held responsible, although they are in fact performed by his employes, and it is well settled in this State that the duty of the master in reference to the roadbed and track he furnishes his employes to pass over is of this class. Railway v. Dunham, 49 Texas, 189; Railway v. Geiger, 79 Texas, 22. And when negligence in respect of one of these duties is the cause of the death it will be considered as having been caused by the act of the master himself, and not by the act of his servant or agent within the meaning of our statute. The last case cited above is directly in point.

Let the judgment below be reversed and the cause remanded for a new trial on account of the excessive verdict.

*Reversed and remanded.*

Delivered October 25, 1892.