## St. Louis Southwestern Railway Company of Texas v. Jas. M. Pope.

### Decided October 17, 1906.

#### 1.—Manner of Stopping Train—Question of Fact—Negligence.

Plaintiff alleged that, while in the performance of his duties as a brakeman upon one of defendant's freight trains, the train was stopped by the engineer in such a sudden and unusual manner as to cause him to be thrown to the ground and injured. Evidence considered, and held not only sufficient to require the submission to the jury of the issue of negligence in the respect alleged, but also sufficient to support the verdict of the jury finding the defendant guilty of negligence.

#### 2.—Servant—Safe Place to Work—Duty of Master.

It is the duty of a master to exercise ordinary care in providing a reasonably safe place for the servant to work. This duty is nondelegable, and the servant has the right to assume that it has been performed. Facts considered, and held to support the finding of the jury that the defendant company was guilty of negligence in leaving a string of cars uncoupled on a siding, plaintiff's duty requiring him to walk along the top of said cars.

#### 3.—Master's Negligence—No Assumed Risk.

A servant never assumes the risk of a danger arising from his master's negligence unless he knows of the act of negligence, or, in the discharge of his duties, it was so open to observation that he will be charged with notice, and is cognizant of the danger incident thereto.

#### 4.—Same—Contributory Negligence.

A servant has the right to assume that the master has performed his duty, and to act upon such assumption, and is not guilty of contributory negligence in so doing.

#### 5.—Written Rule—Not Necessary for Court to Construe, When.

When a rule of the defendant company for the guidance of its employes is in writing, and is free from ambiguity and not open to construction, and when the applicability or inapplicability of said rule to the siding in question was a question of fact to be determined by the jury, it was not necessary for the trial court to construe such rule in its charge to the jury.

#### 6.—Known Negligence of Master—Duty of Servant.

The court charged the jury as follows: "If cars were usually or customarily left coupled together, but if they were sometimes or occasionally left uncoupled, then if that fact was known to plaintiff, or if it was obvious to plaintiff while engaged in his work as brakeman, then it became his duty to use ordinary care to ascertain if the cars were uncoupled on the occasion in question, and if he failed to use ordinary care to ascertain whether or not the cars were coupled, then, if he was injured as the proximate result of the cars being uncoupled, he can not recover." Held, when taken in connection with entire charge, not susceptible of the construction that, if the cars were usually or customarily left coupled together, then, as matter of law, no duty rested upon plaintiff to ascertain whether the cars were coupled on the occasion of the injury. But, query, even if so construed, would it not be proper?

#### 7.—Same.

In order to relieve the master from liability for failure to perform a duty the knowledge of the servant must be of the failure to perform the particular duty in question, and not only of his failure to discharge a similar duty on prior occasions.

#### 8.—Concurring Negligence of Master and Servant—Liability to Third Party.

A railroad company is not relieved from liability for a negligent act of its

engineer in operating a train because such engineer knew, or might have known by the exercise of ordinary care, that the company itself has been guilty of another act of negligence which concurred with his own in causing an injury to another servant.

**9.—Usual Manner of Operating Train—Assumed Risk.**

The court charged the jury that, if they believed from the evidence that the engineer of the train on the occasion in question stopped the train in the usual and customary manner of stopping trains on defendant's road, under similar circumstances, then the plaintiff assumed the risk from the manner in which the cars were stopped, and was not entitled to recover, even though they believed that, had it not been for the manner in which the cars were stopped, plaintiff would not have been injured. Held, the charge was correct.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*E. B. Perkins* and *Marsh & McIlwaine,* for appellant.—"Although there may be sufficient evidence in a case to require the court to submit it to the jury yet if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial" and upon its failure to do so the judgment should be reversed and the cause remanded by this court. Choate v. San Antonio & A. P. Ry., 90 Texas, 88; s. c. 91 Texas, 409, 410; Lee v. International & G. N. Ry., 89 Texas, 590; Gulf, C. & S. F. Ry. v. Wilson, 59 S. W., Rep., 591.

The master is required to use only ordinary care and diligence to avoid injuring his servant. The presumption is always that this duty has been performed by the master, and, in a suit by a servant to recover damages for injuries received by him while doing the work of the master, the burden of proof is upon him to show not only how the injury was inflicted, but he must also show by a preponderance of the evidence that the injuries were the direct and approximate result of the master's negligence. This being true, the mere fact that the cars separated would not show that the separation was the result of negligence on appellant's part, the occurrence not being one of that nature to which the rule "Res Ipsa Loquitur" is applicable. Houston & T. C. Ry. v. Barrager, 14 S. W. Rep., 242; Missouri, K. & T. Ry. v. Thompson, 11 Texas Civ. App., 658; Patton v. Texas & Pac. Ry., 179 U. S., 658; Northern Pac. Ry. v. Dixon, 139 Fed. Rep., 737.

The mere fact that the locomotive and cars were suddenly stopped would not render appellant liable to appellee. The burden of proof being upon appellee, it was necessary that he show by a preponderance of the evidence that the sudden stop was the result of the negligent omission of some legal duty due him by appellant which directly and proximately caused him to be injured. Lovett v. Gulf, C. & S. F. Ry., 79 S. W. Rep., 514; Texas & Pac. Ry. v. Bigham, 90 Texas, 223; Neely v. Ft. Worth & R. G. Ry., 72 S. W. Rep., 159.

Where the evidence tending to support an issue is only sufficient to raise a mere surmise or suspicion the question is one of law and not of fact. Joske v. Irvine, 91 Texas, 574; Texas Loan Agency v. Fleming, 92 Texas, 463.

The rule introduced in evidence being in writing, it was the province of the court to interpret it, and it clearly appearing that the rule was intended only to prevent cars left standing on sidings from running upon the main line and thereby endangering the lives of those operating trains thereon, the fact that appellant may have been guilty of negligence in failing to keep the cars coupled would not render it liable in that its negligence in this respect would have been merely a condition which rendered the injury possible and not the direct and proximate cause of the injury. And for this reason it was error for the court to submit as a distinct ground of recovery the negligence of appellant in failing to keep the cars coupled. Texas & Pac. Ry. v. Bigham, 90 Texas, 223; Neely v. Ft. Worth & R. G. Ry., 72 S. W. Rep., 159; Ft. Worth & R. G. Ry. v. Neely, 60 S. W. Rep., 282.

"In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." And the court, by instructing the jury that appellant would be liable if an ordinarily prudent person could have reasonable anticipated, etc., put the duty too strong on appellant, and for this reason the charge was erroneous. Milwaukee & St. P. Ry. v. Kellogg, 94 U. S., 469.

The court erred in refusing to charge the jury as requested by defendant in its special charge No. 7 as follows:

"You are charged, at the request of the defendant, that although you may believe from the evidence in this case that the engineer did not use the proper care and caution in stopping the locomotive, yet if you believe from the evidence that plaintiff would not have been thrown by reason of the manner in which the locomotive was stopped; had it not been that the cars were uncoupled, then the fact that the engineer did not use the proper care and caution in stopping the locomotive would not render the defendant liable unless you believe from the evidence that the engineer ought reasonably, by the exercise of ordinary care and caution on his part, have foreseen or known that the cars were not coupled together." Texas & Pac. Ry. v. Bigham, 90 Texas, 223; Neely v. Ft. Worth & R. G. Ry., 72 S. W. Rep., 159; Ft. Worth & R. G. Ry. v. Neely, 60 S. W. Rep., 282.

*Johnson & Edwards,* for appellee.—It was the exclusive province of the jury to judge of the weight and credibility of the testimony; and the first five assignments will be overruled if there was evidence from which the jury might reasonably have found either that appellant was negligent in the manner of handling or stopping the train or was negligent in leaving the cars uncoupled while standing together in a string on the side track, apparently coupled, or was negligent in so adjusting the coupling lever that the cars could not be coupled automatically, and that appellee did not assume the risks of the cars being uncoupled under such circumstances and of the lever being so adjusted, and was not guilty of contributory negligence. Gulf, C. & S. F. Ry. Co. v. Holland, 66 S. W. Rep., 69, 70; Houston & T. C. Ry. Co. v. Rowell, 45 S.

W. Rep., 766, 767; Texas & N. O. Ry. Co. v. Lee, 74 S. W. Rep., 349, 350.

Appellee assumed only the risks which were ordinarily incident to the service in which he was engaged and those which he knew or were obvious to him. Appellant's rule and ordinary care for the safety of appellee and others in similar service required that the cars in question be coupled together, and the cars were usually and customarily coupled together under circumstances similar to those in evidence; the evidence showed only occasional or isolated acts of negligence upon the part of appellant's employes in leaving the cars uncoupled on the sidings in question, and appellee did not assume the risk of the cars being uncoupled. The issues of fact involved in the question of the assumed risk were properly submitted to the jury, and the evidence fully warrants the verdict. St. Louis S. W. Ry. Co. v. Pope, 98 Texas, 535, 540; Bonnett v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347, 351; Texas & Pac. Ry. Co. v. Eberhart, 91 Texas, 321; Fordyce v. Culver, 22 S. W. Rep., 239, 240; Missouri, K. & T. Ry. Co. v. Milam, 50 S. W. Rep., 421, 422; International & G. N. Ry. Co. v. Johnson, 55 S. W. Rep., 772; Louisville & N. Ry. v. Vestal, 49 S. W. Rep., 204.

Appellee was in the proper and diligent discharge of his duty; the cars were standing in a string, apparently all coupled together; his train backed against and coupled to them without stopping and continued to back along the side track, when it became his duty to, and he did at once get on top of the cars and walk over them to the rear car; it was dark; under these circumstances it was neither required nor customary nor practicable for appellee to make the inspection necessary to ascertain that the cars were not in fact coupled. The issue of contributory negligence was properly submitted to the jury, and the evidence fully warrants their finding upon that issue. St. Louis S. W. Ry. Co. v. Pope, 98 Texas, 535, 540; International & G. N. Ry. Co. v. Sipole, 29 S. W. Rep., 686.

NEILL, Associate Justice.—This is the second appeal in this case by the railway company. The nature of the case is so fully and clearly stated in the opinions on the first appeal (82 S. W. Rep., 360, 98 Texas, 535, 86 S. W. Rep., 5) it is deemed unnecessary to reiterate it. The judgment now before us is for $20,000.

The first five assignments complain of the court's overruling appellant's motion for a new trial. These assignments, for the purpose of obviating a separate statement under each, are grouped and presented together in appellant's brief. As they present different propositions, we are asked not to consider them because violative of rules prescribed for briefing causes. But as they all attack the sufficiency of the evidence to support the verdict, and much of the testimony is as pertinent to one assignment as to the other, and, in order to deduce conclusions of fact, we must review the evidence any way, it will be much more convenient for us in arriving at our conclusions of fact to consider the assignments in connection with the propositions and counter-propositions and statements under them contained in the briefs of either party than it would be should we ignore them.

The disposition of these five assignments will constitute our conclusions of fact, which will be made in observance of the well-established principle that the most favorable inference which the entire evidence will authorize should be drawn in favor of the verdict.

1. Under the first assignment it is contended that the verdict is contrary to the law and the preponderance of the evidence, in that there is no evidence showing defendant's employees in charge of its locomotive operated the same other than would have been done by an ordinary prudent person under similar circumstances; that there is no evidence showing that the engineer was guilty of negligence in stopping the train, but that it shows conclusively he stopped the engine and cars in a careful and prudent manner. This assignment is followed by the proposition, that "although there may be sufficient evidence in a case to require the court to submit it to the jury, yet if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial; and on its failure to do so the judgment should be reversed and the cause remanded by this court."

If the only ground of negligence alleged as plaintiff's cause of action were that of defendant's employes in handling the engine or of the engineer in stopping the train, and there were no evidence reasonably tending to prove such act of negligence, unquestionably the motion for a new trial should have been granted for that reason. But it is seen from the pleadings that other grounds of negligence were alleged and from the record that evidence was introduced to sustain them. Therefore, if it should be conceded that there was no evidence tending to show negligence in operating the engine or in stopping the train, it would not follow that a new trial should have been granted on that ground, unless it should further appear that the evidence upon the other grounds of negligence was insufficient to prove them, or, if proven, that appellee's injuries were not proximately caused by them. But can it be said there is no evidence tending to prove the act of negligence referred to in this assignment? The very proposition asserted under it impliedly admits there is; but seeks to avoid it upon the ground that the finding of the jury is against the preponderance of the evidence to an extent that shows manifest injustice has been done. It is the province of the jury to determine the credibility of witnesses and the weight to be given their testimony. While this province may not be invaded by judges, the trial judge, who hears the testimony and observes the demeanor of the witnesses, the deportment of the jury during the trial and the attention given by its members to the testimony and argument of counsel, may determine whether the jury has gone beyond the bounds of its province to render a verdict against the preponderance of the evidence which manifests injustice; but, having determined this question on a motion for a new trial in favor of the verdict, an Appellate Court will not, ordinarily, if the evidence were sufficient to carry the case to the jury upon an essential issue, disturb the verdict. Therefore, the question for us to determine under this assignment is, whether there was any evidence tending to sustain plaintiff's allegation that defendant's engineer was guilty of negligence in stopping the train from which the plaintiff fell? The engineer, know-

ing or charged with knowledge of the fact that the plaintiff in the discharge of the duties of his employment was on top of the cars composing the train, was charged with the duty of ordinary care for plaintiff's safety, that is, such care as would have been exercised by a man of ordinary prudence under the same or similar circumstances. If, in his manner of stopping the train, he failed to discharge this duty to the plaintiff, he was guilty of an act of negligence imputable to the defendant. In determining whether an act is negligent, the relation of the party charged with the act to the one complaining of it; their duties growing out of such relation; their relative situation or position, at the time the act was done, and all the attending facts and circumstances tending to throw light upon or indicate its character, should be taken into consideration.

At the time the act in question was committed, one of defendant's freight trains, of about 28 cars with a crew consisting of a conductor, engineer, and three brakemen (plaintiff being the rear brakeman) reached Mt. Pleasants and backed onto a storage track against a string of cars standing thereon, apparently coupled together, pushing them toward the opposite end of the siding. When the train took the siding, plaintiff in pursuance of his duty, coupled the rear car of the train to the front car of the string, climbed on the standing cars and commenced to walk on top of them to the rear car, for the purpose of setting the brakes and signalling the engineer when they were pushed far enough. When he reached the open space between the third and second car from the end of the train farthest from the engine and was in the act of stepping from the end of one car to the other the engineer, without warning, when the train was running from four to six miles an hour, stopped the train which caused the second car from the rear, upon which plaintiff was about to step from the third, to separate from the train and to roll, with the rear car attached thereto, a distance of 25 feet from where the car stopped from which it parted, thereby causing the plaintiff to lose his footing and fall from the end of the car between the rails of the railroad track, whereby he was seriously and permanently injured.

J. B. Taylor, one of the brakemen, who was on top of the train, about seven or eight cars from the engine, testified that at the time plaintiff was hurt the train stopped suddenly; that the engine and some of the cars in the train were equipped with air, the air working and that the engineer applied the air and the train stopped; that he knew the difference between a service application and an emergency application of air brakes, and that the train stopped like an emergency application of the brakes was made.

The plaintiff testified: "I was walking towards the rear so as to get to the last car, and I lacked two cars of being on the last one, and I was about to step onto another one, when the train stopped and the car I was stepping to went out from under me and I went to the ground. According to my best judgment we were going about five or six miles an hour at the time. It seemed to me to be an emergency stop. The train stopped by means of the air brakes. The emergency application is made with about all the air available, and stops the train almost instantly. A stop can be made gradually by giving just a little air at a

time; that is a service application. When the air is applied at once and a stop is made as quick as it can be made, that is called the emergency application of the air. From my experience as a railroad man and the character of the stop that was made I would consider that it was an emergency application of the air that stopped the train that night. It stopped as quick as you could snap your finger. The train stopped, but the other two cars rolled away, and that caused me to fall to the ground right in front of the car I stepped from. I struck the ground right in front of it, in the middle of the track. I guess I struck the ground some six or seven feet in front of it. I did not reach that point, because it was stopped and could not reach it. It stopped at once. The service application of the air is the usual, customary and proper application of the air in switching trains and cars in the yards and under circumstances as in this case. It is not common for a train switching in the yards under circumstances as in this case to be stopped suddenly as the engineer did this train. They slow them down. That is the usual and customary stop. The train was not handled that night in the manner that is customary and usual under the circumstances with reference to a stop. There was no emergency that I knew of requiring an emergency application of air. . . : I had not given any signal to stop the train. There was nothing to require the engineer to stop the train as suddenly as it was stopped. The sudden stopping of the car threw me off, together with the rolling away of the other car to which I had started to step." The nearest car on the track north of where plaintiff was found lying after he fell was about eight feet from him and the nearest south was about eighteen feet. The car nearest him was the one from which he fell and the one south the one he was about to step upon when the train parted.

This evidence in our opinion was reasonably sufficient to warrant the jury in finding that the engineer brought the train to a sudden stop and that it proximately contributed to the plaintiff's fall and consequent injury. This being so, can it be said that the jury were not warranted in finding that this act was negligence? When it is considered that the engineer knew that plaintiff was on top of the train and that his duty required him to walk to the rear end, stepping from one car to another; that in making stops on such occasions prior to that time, generally the train was slowed down and gradually brought to a standstill without a jar of any moment; that by the laws of dynamics to bring a train moving at its speed to a sudden stop would tend to project an unfastened object on top in the direction the train was going with a force in direct ratio to the speed of the train, it can not be said as a matter of law that such act was not negligence. On the contrary, it must be considered a matter of fact for the determination of the jury, and the jury having decided in view of all the attending facts and circumstances that it was negligence, and the trial judge having sanctioned the verdict, it is not for this court to disturb it; but its duty to make such finding of facts its own, which is accordingly done.

2. The second assignment of error complains of the failure of the court to grant defendant a new trial upon the ground that the verdict is against the great weight and preponderance of the evidence, in that it conclusively shows that the rule of the defendant company requiring

that cars left on sidings at grade should be coupled together, etc., was not applicable at Mt. Pleasants, and that the grade of the side track there was not such as rendered it necessary to couple them together, because the evidence shows they would be held in place by their own brakes, and plaintiff had no right to presume that they would be coupled. The rule referred to in this assignment is as follows: "Conductors must see that the brakes are set on cars they leave on sidings, and when the siding is on grade, they must, when practicable, couple all cars together; and in addition to setting the brakes the wheels must be blocked and safety switches properly adjusted. When not in use safety switches must be left open. In switching trainmen must know that brakes are in good order before cutting off cars." It is unnecessary to iterate the evidence pertinent to this assignment; but it is deemed sufficient to say that, while it is conflicting, it is amply sufficient to warrant the jury in finding that the siding on which the cars were standing was on grade, and such as under the rule required that cars left standing thereon be coupled together; that it was so construed and acted upon by defendant's employes in storing cars on said siding; and that, as it appeared to plaintiff the cars were coupled together, he had the right to assume the rule had been observed and that the cars were coupled together. And that, when it is considered that it was plaintiff's duty to couple the string of cars to the rear of his train, then go on top and walk thereon to the rear end of the farthest car of the string so coupled, the jury were warranted in finding as a fact that the failure of defendant to couple all the cars left standing on the siding, as required by said rule was such a breach of duty it owed to plaintiff as constituted negligence. For after the train was coupled to the cars on the siding, from the nature of his employment, the top of the cars became plaintiff's place to work, which the law required the defendant to use ordinary care to see was reasonably safe for him in the discharge of such duties. This duty rests upon the master and is nondelegable; and the servant had the right to assume that it had been performed. It can not be said as a matter of law that a railway company who leaves a string of cars on a siding where its rules require them to be coupled together, which, though apparently coupled, are uncoupled, which it requires afterwards to be coupled to a train and pushed back along the siding, could not reasonably anticipate that the train would part where the cars were not coupled, and a servant whose employment required him to walk along the top of the cars would probably, by reason thereof, fall or be thrown therefrom to the ground and injured. On the contrary, it seems to us, that nothing could in the nature of things, be more reasonably anticipated from such facts. Wherefore, we overrule the assignment and find, in accordance with the verdict, that the defendant was guilty of negligence in leaving the string of cars uncoupled on the siding and that such negligence caused, or at least concurred with other acts of negligence alleged against defendant in causing plaintiff's fall and consequent injuries.

3. It is contended by the third assignment of error that the verdict is without evidence to support it, in that the evidence shows that plaintiff had no right to assume that the cars would be coupled together at the time he attempted to pass over the top of the same, and that he,

in attempting to pass over the tops of the same in the manner he did, assumed the risk of the cars not being coupled together. We have anticipated one of the questions raised by this assignment in disposing of the preceding one by holding that plaintiff had the right to assume that defendant, under the facts and circumstances, had discharged the duty, personal to it, of having the cars coupled together. From which it follows as a logical sequence that, in passing along the tops of them, he did not assume the risk of their being uncoupled; for a servant never assumes the risk of a danger arising from his master's negligence, unless he knows of the act of negligence, or in the discharge of the duties of his employment it was so open to his observation that he must necessarily have known of it, and is cognizant of the danger incident to such act of negligence. The evidence shows no knowledge of plaintiff of the fact that defendant had failed to discharge its duty of having the cars coupled together, nor of such facts as would, in the course of his employment, impute to him knowledge of such act of negligence. Besides, the evidence is sufficient to show that, even had it been proven that plaintiff knew or was charged with knowledge of such negligent act, had it not been for the negligence of defendant's engineer in suddenly stopping the train, that the cars, though uncoupled, would probably not have separated. Hence the plaintiff, not anticipating such negligence of the engineer, could not, though he had known the cars were uncoupled, have foreseen the danger arising therefrom in connection with such act of negligence of the engineer; and would not, therefore, be held to have assumed the risk of walking along the tops of the cars. Hence, we find, with the jury, as a fact that no such risk as is indicated by the assignment of error was assumed by the plaintiff.

4. The fourth assignment of this group complains of the court's not granting defendant a new trial upon the ground that the preponderance of the evidence shows that plaintiff knew, or should have known, by the exercise of ordinary care and diligence, that the cars were not coupled together before and at the time he attempted to pass over them, and had it not been for his own negligence in attempting to pass over the cars without ascertaining they were uncoupled he would not have been injured. This assignment is like the one just disposed of, save that it substitutes contributory negligence for assumed risk, and the questions raised by it have virtually been settled by our disposition of the others. Instead, however, of the preponderance of evidence showing that plaintiff knew the cars were uncoupled, it indisputably shows that he was wholly ignorant of such fact. His testimony, cited by us in considering the first assignment of error, shows that the cars appeared to him to be all coupled together and that he thought they were. As has been seen, it was defendant's duty to have them coupled, that plaintiff had the right to assume such duty had been performed and act upon such assumption and that he did act upon it. An act of negligence of the master towards his servant can not be so shifted from the one to the other as to make the latter guilty of contributory negligence in doing another act in the discharge of his duty, unless he knew or was charged with the former's negligent act and realized the danger incident thereto. Hence, we find as a fact that plaintiff was not guilty of contributory negligence either in failing to inspect the cars for the

purpose of ascertaining whether they were coupled, or in assuming they were coupled and proceeding on such assumption to the discharge of his duty.

5.  The fifth and last assignment of this group of assignments, complains that the verdict is against the great weight of evidence in that there is no evidence that defendant was guilty of any negligence in respect to the separation of the cars, it appearing from the evidence (1) that the coupling appliances of the cars were in good condition; (2) that though in such condition, there was no evidence that the cars were put on the siding at the same time or in the same string; (3) there was no evidence tending to show when the cars were put on the siding, nor that defendant, by the exercise of ordinary care could have discovered that the cars were not coupled together before plaintiff was injured; and (4) there was no evidence that the lever of the coupler of the cars was raised when the cars separated.  As we read the record, there was evidence on all these issues, such as warranted the jury in finding in plaintiff's favor upon them.

The string of cars referred to in the assignment consisted of seven or eight freight cars all equipped with automatic couplers.  The witness Cella testified that he and Turney examined the coupler of the car that separated from the train about twenty-five minutes after the accident happened and that, in working the coupler by raising the lug, then shoving the knuckles in and dropping the lug, he noticed that the knuckles would open two or three times and would not hold.  Turney testified that the coupler was what is called the "Missouri Pacific Coupler," which is worked by a bar or lever that raises the lug which holds the knuckles in their place; that the knuckle is in the end of the drawbar; that when the lever is pushed up it raises the lug and there is a notch or socket that the lever can be pushed into and it will lock and hold the lug up, and the coupling can not be made as long as the lug is up; and this, is the condition in which he found the coupler. That when the lug is dropped it holds the knuckles in their place and the coupling is made; that the lug of the coupler, so far as he knew, was in good order; but that the lever was up and placed in a notch to hold it up; and that he called Cella's attention to the position of the lug and lever of the coupler, and remarked to him, "This is how Jim was hurt."  The witness Hickman testified that he examined the couplers of both cars (the one that separated from the train and the one in the train next to it) about twenty-five minutes after plaintiff was injured.  That both couplers were automatic and operated by a lever; that the lever on the car north of Pope was down and the knuckle closed, and the lever of the one south of him was raised and locked so that it would not couple automatically, and that the condition of the coupler on the car south of Pope was such that it would not couple automatically or by coming in contact with the coupling on another car.  This evidence is certainly sufficient to warrant the jury in finding that the coupling appliances of the cars were not in good condition and that the lever of one of the cars was raised when the cars separated. For there being no evidence that the couplers were tampered with between the occurrence of the accident and the time they were examined

by those witnesses, the jury was warranted in concluding that the couplers were in the same condition when the accident occurred. that they were when examined. This is told by the accident itself; for it can be accounted for upon no other theory than that the condition of the couplers was the same before the accident that it was found they were afterwards. It is immaterial whether this condition was known to defendant or not. It was its duty to know it, and the simplest inspection would have revealed it, and at the same time disclosed the fact that the two cars were not coupled.

We take it that it is immaterial when the string of cars were placed upon the siding, or whether at the same time or not. However, these were matters peculiarly within the knowledge of the defendant, and if it was material to show that the cars were not placed there together in one "cut" at the same time, it was up to the defendant to prove it; and in the absence of such proof, it should be presumed from the character, condition and relative position of the cars that they were.

6. The sixth assignment of error is directed against the following portion of the court's charge: ."If you find from a preponderance of the evidence that some employes of defendant other than plaintiff negligently left a string of cars standing together on the sidetrack in question and apparently coupled to each other and that such employes negligently left some of the cars in the string uncoupled, and that the cars which were so left uncoupled separated while being operated, and if you further find that plaintiff, while in the discharge of his duty as brakeman, was on top of the cars and that while exercising ordinary care he fell from one of the cars to the ground because of the cars separating and was injured as the direct and proximate result of the cars being left uncoupled and would not have been injured if the cars had not been left uncoupled, and if you further find that to leave cars on the sidetrack in question uncoupled when standing together· in a string and apparently coupled to each other was· negligence and was dangerous and not reasonably safe to plaintiff in the performance of his duty as brakeman in handling and working with the cars or to some other employe of defendant engaged in like service and under the same circumstances, and if you further find that an ordinarily prudent person would have reasonably anticipated or foreseen that plaintiff or some other employe of defendant engaged in the work in which plaintiff was engaged at the time he was·injured would likely be injured while working with the cars as plaintiff was when he was injured by the cars being left uncoupled and that an ordinarily prudent person would not have left the cars uncoupled under the circumstances in evidence, then you will find for plaintiff. But unless you· do so find as above set forth, you will find for the defendant on this phase of the case; and although you should find as above set forth, still you will find for the defendant if you find that plaintiff assumed the risks of the cars being left uncoupled or was guilty of contributory negligence as explained in other portion of the instructions given you." Under this assignment eight propositions are sought to be maintained, none of which questions the correctness of the abstract principles of law embodied in the charge, but complains that the evidence is insufficient to authorize it. All these propositions, except the seventh, which com-

plains of the court's not interpretating the rule quoted by us in considering previous assignments, which relates to leaving cars on sidings, because in writing, have been answered and disposed of by what we have said in considering the five preceding assignments, and need not be further noticed. In regard to the court's not construing the rule referred to in the seventh proposition under this assignment, we have to say that the rule is free from ambiguity and not open to construction. It is not referred to in the part of the charge complained of. The only question in relation to it was whether it was applicable to the siding upon which the string was placed, which arose from a difference of the witnesses as to the character of the siding, some testifying it was "on grade" within the meaning of the rule, and others that it was not. This was a question of fact and not of construction. The applicability or inapplicability of the rule to the siding in question was only evidence upon the issue of negligence as to the cars being uncoupled. to be considered by the jury in connection with all the other facts and circumstances bearing upon such issue. The applicability or inapplicability of the rule to that particular siding was a question for the jury to decide. They may have considered it inapplicable, and have still found (which they would have been warranted in doing) that in view of all the facts and circumstances bearing upon the issue the defendant was negligent towards the plaintiff in leaving the cars uncoupled upon the siding, or they may have considered it applicable, and have found that taking it in connection with all the evidence defendant was not negligent in leaving the cars there. A jury may find any way they may deem proper and right upon an issue of negligence, if the evidence makes it an issue, and when the verdict has passed the scrutiny of the trial judge, no Appellate Court can rightly disturb it if the charge submitting the issue was correct, unless it can say such finding is so manifestly unjust as to show that it is the product of passion, corruption or prejudice. To the credit of juries, be it said that such cases rarely come before the appellate tribunals of Texas.

7. This part of the charge, "if cars were usually or customarily left coupled together, but if they were sometimes or occasionally left uncoupled, then if that fact was known to plaintiff or if it was obvious to plaintiff while engaged in his work as brakeman, then it becomes his duty to use ordinary care to ascertain if the cars were uncoupled on the occasion in question, and if he failed to use ordinary care to ascertain whether or not the cars were coupled, then, if he was injured as the proximate result of the cars being uncoupled, he can not recover," is made the subject of the seventh assignment of error. It is urged that the effect of this is to instruct the jury that if the cars were usually or customarily left coupled together, that as a matter of law no duty rested upon appellee to ascertain whether the cars were coupled on the occasion he was injured. When this part of the charge is taken and construed with the charge as an entirety it can not be rightly construed to have the effect here contended for. But suppose for the purpose of argument such construction was given it, would it not be in harmony with the law? The duty of inspection primarily rests upon the master, and his servant whom he puts to work may, ordinarily, assume that such duty has been performed; and that his master has used or-

dinary care to provide for his safety by seeing that the place where, and the instrumentalities with which he is to do the work are reasonably safe for him in its performance. It would seem from the character of the work, that there could be no reason for ordinary minds to reach any other conclusion than it would be unsafe to do it unless the string of cars were coupled together; from which it would logically follow that it devolved upon the defendant to exercise ordinary care to see that this was done before placing the plaintiff on the top of the cars where he would likely be injured in the performance of his duties if the cars were not coupled together; and that plaintiff could act upon the assumption that defendant had performed its duty unless he knew the defendant had sometimes failed in this duty to him or its servants in like employment by occasionally leaving such cars uncoupled upon the siding, or it was obvious to plaintiff while engaged in his work as a brakeman. If such was the case, then, according to the part of the charge, it became plaintiff's duty to use ordinary care to ascertain if the cars were uncoupled on the occasion in question (whether plaintiff's knowledge of the fact of defendant's occasionally leaving the cars uncoupled would, as a matter of law, shift the duty of inspection from the master to the servant, we need not determine, though it would seem to us that it is rather a question of fact than of law) and if he failed to use ordinary care to ascertain whether the cars were coupled, and was injured as the proximate result of their being uncoupled, he could not recover. Therefore, if the paragraph of the charge under consideration should be given the forced construction contended for by the defendant, we are not prepared to say that it would be erroneous. But however this may be, the defendant is in no condition to complain of it, for special charges requested by its counsel are as much open to the construction it seeks to have placed on the charge complained of as such charge is itself. We believe the paragraph of the charge in question was more favorable to defendant than it had the right under the law to expect.

8.    The eighth assignment of error complains of the following paragraph of the court's charge: "Plaintiff also assumed all those risks which arose from the manner in which defendant conducted the business in which plaintiff was engaged. And, although you may find that a rule of defendant required cars to be left coupled when standing together on the sidetrack in Mt. Pleasant, yet if in the management and conduct of defendant's business they were not usually left coupled, he can not recover if the injuries complained of resulted from such manner, if any, of leaving the cars uncoupled. But if the cars on the sidetrack in question were usually and customarily left coupled to each other when standing together and if the plaintiff did not know and could not have known by the exercise of ordinary care that the cars in question were not all coupled together, then he did not assume the risk of the cars being left uncoupled." Much we have said in considering other assignments is applicable to this one, and need not be repeated. If there is any vice in this part of the charge it is too onerous on the appellee, in that it makes him assume the risk of the cars being uncoupled if by the exercise of ordinary care he could have known that appellant's rule requiring cars on sidings to be kept coupled was not

commonly observed; for a rule of the master which simply declares and provides for a duty personal to him, which he owes to the servant can not, because habitually violated, exonerate the master from the discharge of such duty, and cast upon the servant the burden of discharging it and charge him with the assumption of a risk which never would have occurred had the master discharged his duty. If such were the law, the master would have only to make a rule declarative of a nondelegable duty, and then so habitually violate it as to bring knowledge to his servant, in order to exonerate himself from the consequences of his failure to discharge it, by visiting the consequences of such failure upon the very servant to whom he owed such duty. In no case does the servant assume the risk from the failure of the master to do his duty, unless he knows of the failure and the attendant risk, or, in the ordinary discharge of his own duty, must necessarily have acquired the knowledge. His knowledge must be of the failure of the master to discharge the very duty, the breach of which is complained of, not his failure to discharge a similar duty on prior occasions. It makes no difference if the master has frequently before failed to discharge a similar duty, unless such prior failures were so persistent and frequent as to charge the servant with *knowledge* of the master's failure to discharge the *very duty* alleged to have been violated, the servant may act upon the assumption that it has been performed by his master. As to whether such prior failures have been so frequent and persistent as to charge the servant with knowledge of the master's breach of duty in the instance in question is a matter of fact for the jury and not for the court to determine. With the exception of that part which is too favorable to defendant, the portion of the charge under consideration is in accord with the decisions of the courts. (Missouri, K. & T. Ry. v. Hannig, 91 Texas, 347; Bonnett v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Texas & P. Ry. Co. v. Eberheart, 91 Texas, 322; St. Louis S. W. Ry. v. Rea, 87 S. W. Rep., 324; Peck v. Peck, 87 S. W. Rep., 248.)

9. We can not perceive that the portion of the charge made the subject of the ninth assignment is obnoxious to the objection that it was calculated to induce the jury to believe that the court was of the opinion that any issuable fact submitted by it had been proved. Without any intimation on the part of the court as to its opinion on any of such facts, it appropriately submitted the issues raised by them to the jury for their determination, and clearly enunciated the law arising from such facts if found.

10. There was no error in the court's refusal to give the special charge requested by defendant's counsel as is complained of in the tenth assignment. It would be a strange doctrine which would relieve a railroad company from the consequences of a negligent act of its engineer in operating a train, because such engineer might, by the exercise of ordinary care, have known or foreseen that the company itself had been guilty of another act of negligence which concurred with his in causing injury to another servant. Special charge number seven referred to in the assignment was properly refused.

11. The eleventh assignment of error complains of this part of the court's main charge: "You are instructed that if you believe from the

evidence that the engineer of the train in question stopped the train on the occasion in question in the manner that was usual or customary for trains on defendant's road to be stopped under the same or similar circumstances, then the plaintiff assumed the risk from the manner in which the cars were stopped, and you will find for defendant on this phase of the case, although you may believe that had it not been for the manner in which the cars were stopped he would not have been injured." This is clearly the law upon the issue it submits of assumed risk. If the defendant deemed it too restrictive, and desired a charge to present any other matter affecting the issue of assumed risk than the manner of stopping the cars, it should have prepared and requested a special charge in regard to it. (Gulf, C. & S. F. Ry. Co. v. Hill, 95 Texas, 629; Ratteree v. Galveston, H. & S. A. Ry. Co., 81 S. W. Rep., 566; International & G. N. Ry. Co. v. Vanlandingham, 85 S. W. Rep., 847; Crowder v. St. Louis S. W. Ry. Co., 87 S. W. Rep., 166.)

12. The twelfth assignment complains that the verdict is excessive. It is a large one, but when the nature and character of plaintiff's injuries, his long and intense suffering, his age, and prior earning capacity are considered, it can not be said that the verdict shows that the jury were actuated by sympathy, passion or prejudice, nor are we able to say that the damages recovered exceed just compensation.

There is no error requiring a reversal of the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.