## HINES v. FLINN. (No. 1119.)

(Court of Civil Appeals of Texas. El Paso.
May 20, 1920. Rehearing Denied
June 17, 1920.)

**1. Master and servant �köö103(2)—Duty to keep tool in condition defined.**

If there was nothing to indicate to injured section foreman that the temper of a maul has been changed since it was furnished him, or that he knew the dangerous condition in which it was because not properly tempered, he was not under duty to send it to the blacksmith shop to be properly tempered, as required by the railroad's rules.

**2. Master and servant �köö103(2)—Duty to furnish safe tool nondelegable.**

The duty of furnishing a safe and suitable maul or sledge for use in his work by its section foreman is a nondelegable duty of a railroad, of which it cannot relieve itself by charging the foreman with its performance.

**3. Master and servant �köö286(7)—Negligence in furnishing hammer question of fact.**

It cannot be said as a matter of law, without reference to the use made of it, that because a hammer or maul is a simple appliance a master, when furnishing it to his servant, does not owe to him the duty to use ordinary care to see it is reasonably suitable and safe to use in the work to be done.

**4. Master and servant �köö286(7)—Negligence in furnishing defective hammer held for jury.**

In an action for injuries to a railroad section foreman, struck in the eye by a sliver from a maul or hammer, question of negligence in furnishing such hammer *held* for jury.

**5. Master and servant �köö219(3)—Assumption of risk of injury from defective hammer defined.**

If a railroad was negligent in furnishing to its section foreman and his men an untempered hammer, unsafe in the particular work, a defect which, in the exercise of ordinary care, would not have come to the foreman's knowledge, the road cannot escape liability on any theory the foreman assumed the risk.

**6. Master and servant �köö288(12)—Assumption of risk jury question.**

In an action for injuries to a railroad section foreman, when a maul or hammer slivered and the piece struck his eye, question of assumed risk *held* for jury.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by E. L. Flinn against Walker D. Hines, Director General of Railroads, and the El Paso & Southwestern Railway Company of Arizona. From a judgment for plaintiff against defendant Director General, such defendant appeals. Affirmed.

W. M. Peticolas and Del W. Harrington, both of El Paso, for appellant.

Hudspeth, Wallace, Harper & Berkshire, of El Paso, for appellee.

WALTHALL, J. This suit was brought by appellee, Flinn, against appellants, Walker D. Hines, Director General of Railroads, and the El Paso & Southwestern Railway Company of Arizona, to recover damages for personal injuries alleged to have been sustained by him while in the employ of appellants as a section foreman on one of its lines of railroad in New Mexico. The facts are substantially without dispute and are as follows:

On February 3, 1919, Walker D. Hines was the Director General of Railroads, including the El Paso & Southwestern Railroad Company, and was then operating the lines of said company in New Mexico in interstate commerce, and Flinn was section foreman on the railroad at Victoria, N. M. On the day named it became necessary and a part of Flinn's duty to repair a part of the railroad track and switch, and to make the repairs it was necessary for Flinn to cut or remodel a tie plate, and in order to do so it became necessary to use a chisel and strike it with a chisel hammer or sledge; the hammer having been furnished appellee and other employés by appellant for that purpose. While Flinn was holding the chisel another of appellants' employés was striking it with the sledge, and while doing so the sledge slivered and a piece of the sledge flew off, striking Flinn in the eye, and caused the injuries of which he complains. The negligent act assigned was that the sledge furnished him was unsafe because it was too hard, brittle, not properly tempered, and for that reason when used in striking on another hard instrument it broke or slivered; that appellants knew, or by inspection could have known, of the defective condition of the sledge; and that Flinn was ignorant of its condition.

Appellants answered by general denial; denied Flinn's injury and the extent of it as alleged; alleged that the sledge or hammer was a common and ordinary tool, which, if defective, its defects were plain and apparent to Flinn, and that it was Flinn's duty to observe and know of its defects and not to use the sledge if it was in the condition as alleged; that if Flinn was injured same was due to ordinary risks incident to his employment, and that Flinn assumed the risk of using the sledge in the manner and in the condition it was in; that Flinn was section foreman, and if any inspection of the hammer was necessary to determine its condition it was his duty to make the inspection; that appellants' instructions con-

�køøFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tained in its book of rules made it Flinn's duty to keep all tools in first-class condition, and when same needed repair to send same in to place designated by the head of the department and to make requisition for a new one. The case was dismissed as to the railroad company, and a verdict and judgment rendered against appellant, Walker D. Hines.

Appellant's insistence here is that the court was in error in refusing to peremptorily instruct the jury to return a verdict for appellant. While the error assigned is discussed under three propositions, they are to the effect that, where the evidence is uncontroverted and to the effect that the duty of inspection and keeping the tools and appliances in proper condition is on the employé, the employé complaining of injury by reason of such tools being in bad order or condition, and this defect being the proximate cause of the injury, such employé cannot recover; that where the duty of inspection is with the employé he is presumed to know the defects, if any, in the tools which it is his duty to inspect and keep in repair or replace with new or other tools, and that under such conditions the appellee assumes the risk, as a matter of law, of using such defective tool. Without stating all the evidence, we will state briefly such as seems relevant to the contention made.

Appellee testified: In his 25 years' experience he had occasion to handle mauls and chisels of that character; from his experience, when a tool has been broken he can judge whether or not it is properly made; had had the maul on the hand car before the accident and used it; it was a tool they used right along, but he never had any occasion to make a special examination of it; said:

"It was my duty and I did inspect tools and keep them in good shape as near as I could. * * * As to whether I stated a while ago that I had not inspected this hammer, I took it for granted it was a good maul because there were no defects. Yes; I looked at the maul; it looked perfectly good as far as I was concerned."

Welch testified: Was road master; was familiar with the duties of section foreman; the foreman is responsible for his tools; is supposed to know his tools are safe; quoted rule 280, which reads:

"Employés must keep their tools in first-class condition. When needing repair, they must be sent to the place designated by the head of the department. When a tool is no longer serviceable, the foreman must make requisition for a new one and send the old one to the place designated by the head of the department." "When tools break or wear out, the section foreman sends them to the blacksmith to be fixed, and it is the duty of the blacksmith to properly temper the tools. When a tool is too brittle it is liable to break. When a tool is properly tempered it will mash instead of break. Flinn made no requisition for new tools, mauls, or chisel. If a tool is not serviceable Flinn is supposed to order a new one. He is supposed to do so only when they are battered or broken. When a tool shows to have been chipped off, that is an indication that something is wrong and it should be sent in."

Paul Flinn, son of appellee, testified:

"My father was holding the chisel so the Mexican could cut the end of the tie plate off. * * * I examined the chisel maul after the accident occurred. On the face of the maul and the side it was all chipped off. Chipped off 1½" on the face, and about 1¼" upon the side of the maul. I didn't find any other slivers around there. * * * This maul was chipped around the edge of the face and off the side. As to how many places I noticed this chip, on the other side of the maul there was maybe two small ones, and on the other side of the maul it was perfectly good. *. * * I didn't see it break, but I was using it just a few minutes before. This new break I have referred to was a large chip off one side. It was a place about 1½" around the side of the face of the maul and 1½" up the side. The large chip off showed to be a new break. There were some small old chips off the opposite side; they had broken some time previous to that. Showed to be an old break. I do not know the exact time my father had been foreman at that place; I think about three or four months, maybe two months. * * * He had been using the tools all the time he had been there."

[1, 2] It seems to us that the extent of the duty appellee assumed in looking after the safe condition of the maul or hammer is well stated in the rule above quoted. He was to keep the tool in first-class condition; when it needed repair he was to send it to the place where it was to be repaired; the witness Welch added to the rule that when it was not in proper temper he was to send it to the blacksmith. The maul seems not to have had the proper temper, and for that reason, instead of mashing when used, it splintered when struck on the steel or iron plate. The evidence does not disclose that when the accident happened the maul was in a temper different from what it was when it was furnished Flinn. If there was nothing to indicate to Flinn that the temper of the maul for some reason had been changed since it had been furnished to him, or that he knew the dangerous condition in which it was because not in proper temper, we can see no reason why he should send it to the blacksmith shop to be properly

tempered. The duty of furnishing a safe and suitable maul is one, we think, of the nondelegable duties of the master of which he cannot relieve himself by charging his servant with its performance. It is a personal obligation the master owes to the servant. Gulf, etc., Ry. Co. v. Johnson, 1 Tex. Civ. App. 103, 20 S. W. 1123; Railway Co. v. Pope, 43 Tex. Civ. App. 616, 97 S. W. 534.

[3] It cannot be said, as a matter of law, without reference to the use to be made of it, that because a hammer or maul is a common and simple appliance the master, when furnishing it to his servant for use in the discharge of his duties as such, does not owe to him the duty to use ordinary care to see that it is reasonably suitable and safe for the servant's use in the service to be performed by him. If the hammer was to be used in a service not requiring a proper temper, it might be said that the master was not lacking in care in furnishing one not properly tempered; but we think it should not be so said as a matter of law when the use to be made of it required a proper temper when struck against a steel or iron plate to prevent it from being a dangerous instrument. Houston & T. C. Ry.

Co. v. Patrick, 50 Tex. Civ. App. 491, 109 S. W. 1097.

[4-6] We are of the opinion that the circumstances of this case, as disclosed by the evidence, were such as to have a jury determine the question of negligence vel non of the appellant upon a consideration of all the facts. The question of assumed risk depends upon the same considerations. As said by the Supreme Court in Drake v. San Antonio & A. P. Ry. Co., 99 Tex. 240, 89 S. W. 407, in furnishing a tool of any kind, the master is bound to use ordinary care for the safety of the servant who uses it. If there was negligence on the part of appellant in furnishing the hammer which, because of its unfitness for the use to which it was to be put, exposed Flinn to a danger which in the exercise of ordinary care in doing his work would not have been brought to his knowledge, he cannot be held to have assumed the risk resulting from his employer's negligence. We have reached the conclusion that the issues of negligence and assumed risk under all the circumstances and facts shown were for the jury to determine, and that the trial court was not in error in refusing to give the peremptory instruction requested.

The case is affirmed.