### STEPANOVICH v. PITTSBURGH & BALTIMORE COAL CO.

(Circuit Court of Appeals, Third Circuit. January 8, 1915.)

No. 1889, Oct. Term, 1914.

1. MASTER AND SERVANT (§ 265*)—ACTIONS FOR INJURIES—EVIDENCE—RES IPSA LOQUITUR.

In an employé's action for injuries, claimed to have been caused by the employer's failure to provide a reasonably safe brake for use on a coal-pit car which he was required to handle, the happening of the accident was not proof of negligence on the part of the employer, and the burden was on the employé to prove that the employer's negligence caused the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in actions for injuries to servant, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF
   EVIDENCE.
   In an employé's action for injuries, claimed to have been due to the employer's failure to provide a reasonably safe brake on a coal-pit car which the employé was required to handle and to its failure to provide a proper car inspection system, evidence *held* insufficient to support a recovery in that it failed to show how the accident happened, that there was any defect in the brake, or, if so, that it could have been discovered by inspection.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF
   EVIDENCE.
   In an employé's action for injuries, evidence as to the employer's failure to inspect was not sufficient proof of negligence, in the absence of any showing that there was any defect in an appliance, since the purpose of an inspection is to discover defects and the failure to make an inspection merely charges the employer with notice and knowledge of what due inspection would have shown.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Wm. H. Hunt, Judge.

Action by John Stepanovich, by his father and next friend, Marko Stepanovich, against the Pittsburgh & Baltimore Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Geo. C. Bradshaw, of Pittsburgh, Pa., for plaintiff in error.

Charles B. Prichard, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge.   In the court below, Marko Stepanovich, a subject of the King of Hungary, brought suit in his own behalf and as father and next friend of his minor son John, against the Pittsburgh & Baltimore Coal Company, a corporation of Pennsylvania. The action was for damages inflicted on said John through the alleged negligence of the coal company. On the trial defendant asked for binding instructions, on the ground that there was no proof of negligence on its part. The court refused the request and submitted the case to the jury. It found a verdict for the plaintiff. On entry of judgment thereon defendant sued out this writ.

[1] The liability of the defendant to the plaintiff here declared on is that the coal company failed to furnish young Stepanovich, its employé, with a reasonably safe brake for him to use on the coal-pit car which injured him, and that the coal company had no proper car inspection system in the mine. In a case like this, an accident is not proof of an employer's negligence, but the employé must go further and prove the employer's negligence caused the accident. The principle on which this case must be determined is laid down by the Supreme Court of the United States in Looney v. Metropolitan Co., 200 U. S. 486, 26 Sup. Ct. 305, 50 L. Ed. 564, where that court said:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of an injury. There must be some substantive proof of the negligence. Knowledge of the defect, or some omission of duty in regard to it, must be shown."

The happening of the accident to young Stepanovich was not therefore proof of negligence on the part of the coal company, and it is our duty to examine the evidence and see whether it shows any substantive proof of negligence, or what is the same thing, lack of due care on the part of the coal company in regard to this brake, whether it had any knowledge of such brake being defective, or whether it has omitted some duty in regard to it.

[2, 3] To make out the required proof of the coal company's negligence, the plaintiff showed that on March 11, 1910, his son was employed as a switch boy by the coal company, and that it was his duty to receive, from a passing motor train, a certain pit car loaded with slate and place it on the switch which he attended. This, he says, his son attempted to do, but by reason of the company furnishing an improper brake he was thrown under the car and injured. At this point it will be noted that there is no charge that the brake on the car was not originally of proper construction, but the charge is that the coal company failed to keep it in proper order. The car and brake were of the usual kind. The former was about three feet high and some four feet across the top. Pivoted at a central point at the bottom of its front end was an iron brake handle. This handle extended above the top of the car, so that, while one was going alongside of the car, he could push or pull the brake handle toward or away from him as far as an encircling iron rod or keeper, fastened on the end of the car, would allow the brake handle to travel. Inside this rod, and fastened to the car end, was a notched iron bar, the teeth of which engaged and held the handle as the brake engaged the wheels. What happened is best told in young Stepanovich's own testimony, which was:

"Q. When you attempted to stop this car this morning, what happened? A. I went straight with the brake. Q. Did the brake stop? A. It didn't stop; it went straight on. Q. What happened to you? A. When I put my weight on it I went straight with the brake. Q. How far did the brake go? A. It went clean on the other end of this thing. Q. How much farther than ordinarily? A. If it would be in good order, it might catch pretty close to the center. When it is wore out, the brake or anything, it goes clean over. Q. That is what happened that morning? A. Yes, sir. Q. What effect did that have on you? A. The car didn't stop when I was putting that brake on, as I went straight with it. Q. Where did you go? A. It threw me right in under."

This comprises the entire testimony of the plaintiff as to the accident. It shows the brake handle did not catch in the notches and went to the full limit of the keeper, and that by reason thereof the boy fell under the car. As to what was wrong with the brake, there was no proof. Whether a brake shoe had come off or been broken; whether a connecting rod had parted; whether the brake handle had given way; or whether whatever had happened was some patent thing which inspection would have shown, or was some latent defect which no inspection or inspections would have disclosed—all are matters left to

conjecture instead of being proven by evidence. Measuring this proof by the standards the Supreme Court has set—and very wisely so, as reflection will show—it is clear to us that the plaintiff has not proved any negligence on the part of this coal company, and therefore a wrong was done the defendant when a jury was allowed to subject it to liability for an accident, for the happening of which no fault or negligence on its part was shown. There being such lack of proof as to the cause of the accident, it is manifest that to say the company's negligence is established by lack of inspection is to lose sight of the purpose of inspection. The making of an inspection is to discover defects and thus avoid accidents. The failure to make inspection serves to charge defendant with notice and knowledge of what due inspection would have shown. But where the proof fails to show any defect which inspection would have disclosed, it is clear that no basis of defect is proved to have existed with which to charge the defendant with notice by reason of noninspection. We do not mean to say that cases of other appliances, and other circumstances, may not arise in which noninspection for a long time may be evidence of negligence, but the present is not such a case.

From what has thus been said it is clear we are warranted in deciding this case on the lack of sufficient testimony as above outlined. In view, however, of the long and unexplained delay in bringing this suit, the grave contradictions of the boy's testimony by two disinterested witnesses, and the affirmative proof of the prior condition of this brake by the uncontradicted proof of another, we deem it proper to refer at length to the proofs in this case to show that the application of the rule of law as to the burden of proof, as established by the Supreme Court, works no injustice. Turning, first, to the uncontradicted proof given by the defendant, we note that Chester Hackison was then working for the company. He has since left its employ, and his testimony is not contradicted. He assembled this particular draft of cars just before, and identified the slate car after, the accident. He testified that in making up the train he took it down a grade; that he used the brake on the slate car; that it was then good; that it "spragged" (that is, stopped absolutely) both car wheels. This was from 5 to 10 minutes before the accident. Hackison's testimony is not contradicted and shows that if the brake was out of order 10 minutes later it must have been by reason of something that happened in the meantime. We have accepted, as we are bound to do, since the jury must have so found, that the accident happened as young Stepanovich's account above quoted shows, and have decided the case on that basis, but the testimony of Hackison as to the brake being in working order this short time before the accident gives weighty credence to the account of the accident given by two other witnesses. One of these was George Ragovich, who was the rear brakeman on the train. He testified that as the train approached the switch he pulled the coupling that held the slate car and applied the slate car brake and slowed the car. He then said:

"As soon as I cut the wagon off and put the brake on, the boy jumped on the front of the slate wagon and it knocked him down"

He also says the boy was not trying to set the brake. Ragovich was a disinterested witness; no fault of his was charged as causing the accident; he was, when he gave his testimony, no longer employed by the coal company. This version of the accident was the one given to John P. McElhaney, the mine foreman, by young Stepanovich himself. McElhaney testified that immediately after the accident and while the physician was dressing his wound—

"he told me that when George set the brake on the car, he went to jump on the front end of the car, and he missed his foot by slipping on the bumper, and the car knocked him down and it ran up on his leg."

It will also be noted, as corroborative of this version of the accident, that no complaint of the brake's condition was then made by the injured boy, nor was the brake examined by any one after the accident, a step which would naturally have been taken by some one, had the blame of the accident been then attributed to it. Passing by these proofs, however, and limiting ourselves to that adduced by the plaintiff, we are of opinion such latter proof failed to show negligence on the part of the defendant. The judgment below is therefore reversed, and the cause remanded for further action.