## LOUISVILLE & NASHVILLE RAILROAD CO. *v.* KEMP.

1. The uncontradicted evidence in the case shows that the plaintiff, at the time he received the injuries complained of, was engaged in interstate commerce; and the charge of the court to the jury upon this question was not error.
2. There was no evidence in the case to support the allegations of the petition showing negligence upon the part of the defendant railroad company or its employees, and the verdict was unauthorized by the evidence.
3. The court erred in giving in charge to the jury the provisions of the State statute raising a presumption against the railroad company upon proof of injuries by the running of its locomotives or cars.

OCTOBER 2, 1913.

Action for damages. Before Judge Fite. Gordon superior court. June 1, 1912.

*Tye, Peeples & Jordan, D. W. Blair,* and *O. N. Starr,* for plaintiff in error. *George F. Gober,* contra.

BECK, J. This was an action under the Federal employer's liability act of April 22, 1908, to recover for personal injuries sustained by the plaintiff through the negligence of the defendant and the co-employees of the plaintiff. It was alleged as follows: The defendant, the Louisville & Nashville Railroad Company, a railroad corporation of the State of Tennessee, operates a line of railroad in Georgia, in Tennessee, and in other States. The plaintiff was in the employment of the defendant as a foreman of a section of its railroad, and had charge of a force of section-hands and track-hands employed by the defendant in and upon that section. His duty required him to inspect and maintain the track and roadway upon said section. On the 22d day of May, 1909, in pursuance of orders received, he started over the section to inspect the track and road-bed, and in carrying out said order he placed a hand-car upon the track, and, with said hands in his charge thereon, pro-

ceeded along the track, preceded by a flagman whose duty it was to give warning to approaching trains of the proximity of the hand-car and to warn the hand-car occupants of the approach of trains. When they had proceeded some distance along the track, a freight-train, not on schedule time, and running at a high and dangerous rate of speed, approached the hand-car, and, without slackening speed, continued to approach, endangering the lives of plaintiff and the hands with him, placing them in an emergency calling for prompt action. To prevent a collision, the plaintiff and his hands removed the car from the track. It was heavy and unwieldy, and required the utmost effort and energy on the part of plaintiff and 'the hands to remove it. In removing the car the plaintiff strained and exerted himself, and was injured by the negligent handling of the car by the hands under him; they lifted the car too much on one side and pushed it too far towards the side on which plaintiff was, and caused it to turn over, thereby injuring him in a manner specifically described in the petition. Negligence was charged also in that the flagman who preceded the car did not warn the freight-train of the proximity of the same, and did not give warning to those on the hand-car; that the employees in charge of the freight-train ran it at a dangerous rate of speed, to wit, 50 or 60 miles an hour; and that they were negligent in running by and passing the flagman, and in not stopping the train, seeing the proximity of the hand-car. The freight-train was engaged in interstate commerce, handling freight from points in various States to points in this and other States; and the track upon which plaintiff and the sec-tion hands were working was for the passage of interstate trains as well as for intrastate trains.

1. The evidence sustained the allegations of the petition to the effect that at the time the plaintiff received the injuries complained of he was, with a force of hands in his charge, in pursuance of an order received from the proper authorities of the road, going over the track, making an inspection of the entire roadway on his sec-tion, road-bed and waterways; that the freight-train, in conse-quence of the alleged negligent running of which he was injured, was engaged in interstate commerce; and that the railway track over which the freight-train was being operated was used in both interstate and intrastate commerce. Consequently, under the rul-ing in the case of Pedersen *v.* Delaware &c. Railroad Co., 229 U. S.

146 (33 Sup. Ct. 648), the plaintiff was engaged in interstate commerce at the time of receiving the alleged injuries of which he complained.

2. While, under the provisions of the employer's liability act referred to above, contributory negligence upon the part of an injured employee does not bar a recovery, before the injured employee can establish liability for injuries suffered by him while employed by the carrier it is necessary for him to show by his evidence that the injuries received resulted in whole or in part from the negligence of the defendant carrier, its agents or employees. And after a careful examination of the evidence in this case we are of the opinion that the evidence fails to show negligence chargeable to the defendant carrier or any of its employees or agents. The allegations of negligence are not supported by any evidence introduced on the trial. The plaintiff was the only witness who gave testimony as to the manner in which he was injured. His testimony shows that at the time of receiving the injury he was going over his section of the track upon a hand-car with a force of hands under him. There had been rain the night before, and he was making an inspection of the entire roadway of his section, the road-bed and waterways, for the purpose of making a report as to the condition of the track. He had proceeded about a mile and a half over the road, and on approaching a curve, and being about 150 yards from it, he sent forward a flagman, who, soon after reaching the curve, gave the plaintiff a signal to remove the hand-car. There were four employees on the car besides the plaintiff, at the time the signal was received. No train was due under the schedule at that time. The plaintiff testified that the freight-train which they met "was running fast, but that was nothing unusual. Freight-trains over there have a fast schedule; the road is comparatively straight, and they run fast. I knew they run fast, and learned it the first day I was out on the road. I had been in charge of that section from the 23d of March until the 22d of May. There was nothing unusual for an extra train to be running over there; we expect them at any time; in fact we were on the lookout all the time for freight-trains. Passenger-trains had a regular schedule, and a lot of freight had a regular schedule; but a great deal of the freight handled on the line was by trains that were run extra or had no schedule at all; so we had to be on the lookout for those trains all the time. I had

to look out for them; they did not look out for me. In fact everything on the road had the right of way over my lever-car; and it was having that in mind that caused me to send forward this flagman. I did not know what was around the curve. I did not know what minute one of these great big engines would hop around there —come steaming around there. I sent the flagman because I knew the engineer wasn't on lookout for me; they don't look out for nothing, horses, men, or nothing; if a rail was out, they might look out for the track. In sending out a flag I was doing what the company required me to do—look out for trains and flag around all curves. As far as I know, Mr. Gravett [the flagman sent ahead] gave me a signal just as soon as he discovered a freight-train was coming." The plaintiff further testified that when he received the signal to remove his car from the track, the car being loaded heavily, he jumped off to assist the men in removing the car; that when the gang was small he was expected to take hold and help the men; "it was part of my duty to do that." The bank was very steep, slick and rough; and he slipped and fell, and the car came over on him and he became unconscious, remembering nothing further. When he slipped and fell he was trying to get the car off,—"easing down the bank with the car." The car went to the bottom of the ditch. The plaintiff did not remember how far that was from the track. The ditch was something like three and a half feet deep. The train was coming before they took the car off; he saw the smoke of it, could not tell at what rate of speed it was running, but it was running pretty fast.

In all of the plaintiff's testimony there is no evidence to show any negligence whatever upon the part of the employees who were operating the freight-train, nor upon the part of the employees who were engaged with him in removing the hand-car. There is no suggestion in the evidence that the freight-train ran at a too high rate of speed, or that there was not time to remove the car safely from the track, or that any one of the section-hands whom the plaintiff was assisting in the removal of the hand-car from the track was negligent in any respect whatever. The injuries he received were the result of an accident, pure and simple, in no way brought about by negligence upon the part of others. And the defendant railroad company, as it appears from this evidence, being free from all negligence, was free from liability.

3.   The plaintiff has based his right of action upon the provisions of the Federal act referred to above; and the rights of the plaintiff and the liability of the defendant are to be determined by that act and under the construction of its terms.   So far as the subject-matter of this suit is concerned, the act of Congress supersedes the legislation of the State which would have covered the subject in the absence of Federal legislation; and while the case was tried in the State court, it is to be tried under the provisions of the Federal statute.   That being true, apart from any consideration as to the correctness of the charge in itself, the court should not have charged the provisions of the State statute which raises a presumption in certain cases against a railroad company upon proof of injury by the running of its locomotives or cars.

In view of the ruling which we have made in the second division of this opinion, reversing the judgment of the court below upon the ground that the verdict was without evidence to support it, thereby disposing of the case upon its merits, we do not think it necessary to discuss certain portions of the charge which the plaintiff in error contends in its motion for a new trial were erroneous.

*Judgment reversed.   All the Justices concur.*