### 8250. WILLIAMS *et al.* v. WESTERN AND ATLANTIC RAILROAD COMPANY.

Under the evidence in this case, even if it was erroneous to refuse to allow the amendment to the petition, the error was not harmful to the plaintiffs; and the court did not err either in granting a nonsuit or in refusing to reinstate the case.

DECIDED AUGUST 3, 1917. ON REHEARING, SEPTEMBER 28, 1917.

Action for damages; from Fulton superior court—Judge Ellis. September 30, 1915.

*Westmoreland & Westmoreland, Alfred C. Broom,* for plaintiffs.
*Tye, Peeples & Tye,* for defendant.

BLOODWORTH, J.. Chester A. Williams, nineteen years of age, was killed by an explosion at a power-plant of the Western & Atlantic Railroad Company, by which he was employed at the time as what is known as a "maintainer." The first suit for this homicide was brought by Mrs. Jennie L. Williams, mother of the deceased. Demurrer was filed and sustained. In that case the Supreme Court (142 *Ga.* 696, 83 S. E. 525) held: "Where suit was brought by a mother for the homicide of her son by a common carrier by railroad, the deceased son having been an employee of the railroad, and a demurrer was filed to the petition on the ground that the father was not joined with the mother and was a necessary party plaintiff to the action (there being no personal representation of the deceased) since the passage of the railway employers' liability act of 1909 (Civil Code (1910), § 2782), it was not error to sustain such demurrer."

The second suit was brought by Mrs. Jennie L. Williams and C. L. Williams, based, as was the former suit, upon the act referred to above. In their petition they alleged that they were the mother and the father of Chester A. Williams; and the last paragraph of the petition was as follows: "That the plaintiffs bring this suit against the defendant for the negligent homicide of their son, as hereinbefore alleged, and sue for the full value of his life, and lay their damages at the sum of. fifty thousand dollars, for which they ask judgment against the defendant." At the appearance term the defendant filed a plea denying liability. When the case was called for trial on the 28th day of September, 1915, the defendant amended its plea by alleging that at the time of the death of Chester A. Williams it was a common carrier by railroad engaged in commerce between the State of Georgia, the State of Tennessee, and other States of the United States, and that at that time Chester A. Williams was employed by the defendant and was also engaged in such commerce. The trial proceeded; and when the evidence for plaintiff was in, the defendant moved the court for a nonsuit, "on the ground that the plaintiff had failed to prove the cause of action set forth in the petition, the specific ground of said motion being that the cause of action set forth in the petition was filed and prosecuted under the employers' liability act of the

State of Georgia, while evidence disclosed that the injury was sustained while both the defendant and the decedent were engaged in interstate commerce; and upon the further ground that the evidence disclosed that the defendant had not been shown guilty of any negligence which caused the death of decedent." Thereupon the plaintiffs offered to amend their petition by so changing the title of said case that it would read, "Mrs. Jennie L. Williams and C. L. Williams, as administratrix and administrator of the estate of Chester A. Williams, deceased, *v.* Western & Atlantic Railorad Company;" and by alleging that the plaintiffs were the duly appointed personal representatives of the estate of Chester A. Williams, and that as such they had qualified, and that "said Jennie L. Williams, mother, and C. L. Williams, father, of the intestate, are the sole beneficiaries;" and by striking from the 12th paragraph above quoted the words, "and sue for the full value of his life," and substituting in lieu of the stricken allegation the following: "and sue for the pecuniary value of the life of the deceased." The court refused to allow this amendment, and sustained a motion for nonsuit. The plaintiffs filed a bill of exceptions pendente lite, covering the rulings of the court in refusing to allow the amendment and in granting the order of nonsuit.

On the 23d of October, 1915, during the term at which the nonsuit was granted, the plaintiffs presented to the trial judge a petition to set aside the order disallowing the amendment and the order granting a nonsuit, and to reinstate the case. The court refused the motion to reinstate, in the following words: "In this case I seriously doubt whether after granting the nonsuit it is matter of discretion to set aside the order; but [I think] that the motion ought to be determined as matter of law, and I put my refusal to grant the motion on the question that under the law I ought to refuse it." The refusal to allow the proffered amendment, the grant of nonsuit, and the refusal to reinstate the case are all before us for review.

Chester A. Williams at the time of his death was a "maintainer" at the yards of the defendant in Fulton county, Georgia. A part of the work of a "maintainer," as shown by the evidence, was to keep up the telephones that connected the towers in which the men who handled the switch-levers worked, and that were used for the

purpose of giving the levermen information as to the movement of trains; and to look after the repairs to switches, signals, and targets, "which control the movements of all trains running over those tracks." The evidence.also shows that all the trains passing over the tracks where the decedent was "maintainer," including all that went out of and came into Georgia on the track of the defendant, and trains "operated over the N., C. & St. L. and L. & N. Railroads, are all operated by .those switches and run over those tracks." As it was shown (Shanks v. Delaware &c. R. Co., 239 U. S. 551, 36 Sup. Ct. 188, 60 L. ed. 436; Pedersen v. Delaware &c. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153; St. Louis &c. Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156) that the deceased and the defendant, at the time of the homicide, were both engaged in interstate commerce, it is held:

1. That the cause of action, if any, arises under the Federal employers' liability act, and under the petition as filed "the case pleaded was not proven and the case proven was not pleaded," and the court properly granted the nonsuit. Toledo, St. L. &c. R. Co. v. Slavin, 236 U. S. 454-456 (35 Sup. Ct. 306, 59 L. ed. 671); Eng v. Southern Pac. Co., 210 Fed. 92; St. Louis &c. Ry. Co. v. Seale, supra.

2. Granting that the proffered amendment was sufficient to change the suit to one under the Federal statute, the refusal to allow the amendment was not harmful to the plaintiffs, because, with such amendment allowed and the case proceeding under the Federal statute, there would have been no presumption of negligence against the railroad company, arising upon proof of injury to the employee; and as there was no substantive proof that the defendant was guilty of any act of negligence, the nonsuit was proper. L. & N. R. Co. v. Kemp, 140 Ga. 657 (79 S. E. 558). See also Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617 (17 Sup. Ct. 707, 41 L. ed. 1136); Patton v. Texas & Pacific Ry. Co., 179 U. S. 658 (21 Sup. Ct. 275, 45 L. ed. 361); Looney v. Metropolitan R. Co., 200 U. S. 480 (26 Sup. Ct. 303, 50 L. ed. 564); Stepanovich v. Pittsburg & Baltimore Coal Co., 218 Fed. 604 (134 C. C. A. 362).

3. As the court did not err in granting the nonsuit, it neces-

sarily follows that there was no error in failing to reinstate the case.

Judgment affirmed. *Broyles, P. J., and Jenkins, J., concur.*

ON REHEARING.

In preparing the original opinion in this case this court did not overlook any material fact in the record, or any decision "which is controlling as authority and which would require a different judgment from that rendered." After thoroughly reviewing the evidence and the authorities cited in all the briefs on the case and examining many other authorities, we still think the opinion as originally written is correct.

In their briefs on the motion for rehearing the attorneys for the plaintiffs in error urge that the doctrine of res ipsa loquitur should be applied, and because of it the case should have been sent to the jury. In the case of the Southern Ry. Co. v. Derr, 240 Fed. 73, and which is cited by the plaintiffs in error, a distinction is drawn between the application of the maxim res ipsa loquitur in actions by passengers against carriers and its application in suits by injured employees. In that case the first and third headnotes are as follows: "1. Negligence can not be inferred merely from the fact of disaster; the burden being on plaintiff to establish by proof that negligence did exist." "3. A case may not be submitted to the jury where there is at most only a balanced probability that actionable negligence existed." Circuit Judge Denison, in the opinion in that case, quotes from the opinion written by Judge Lurton in Cincinnati &c. Ry. Co. v. South Fork Coal Co., 139 Fed. 528, 532 (71 C. C. A. 316, 1 L. R. A. (N. S.) 533), in part as follows: "Manifestly a presumption of negligence does not arise upon mere evidence of an injury sustained. . . The maxim 'res ipsa loquitur' does not, therefore, apply when the circumstances in evidence are of doubtful solution. . . In each action for a tortious injury the question as to what evidence will make a prima facie case of negligence and require an explanation from the defendant will depend upon the nature and circumstances of the injury and the measure of care due from the defendant." Judge Denison then says: "Applying these principles to this case, and in the manner and for the reasons above stated, we think the plaintiff's proof failed to show a satisfactory, tangible, and substantial basis upon which the action of negligence could be so supported that it

would be an inference and not a guess." In the instant case as there is no direct proof as to how the gas escaped or accumulated, and no such proof that the door or windows were closed, nor any evidence of what the deceased did after entering the room, is there any "substantial basis upon which the action of negligence could be so supported that it would be an inference and not a guess?"

In the case of Stepanovich v. Pittsburg & Baltimore Coal Co., supra, the first headnote is as follows: "In an employee's action for injuries, claimed to have been caused by the employer's failure to provide a reasonably safe brake for use on a coal pit car which he was required to handle, the happening of the accident was not proof of negligence on the part of the employer, and the burden was on the employee to prove that the employer's negligence caused the accident," and in the opinion the circuit judge said: "In a case like this, an accident is not proof of an employer's negligence, but the employee must go further and prove the employer's negligence caused the accident. The principle on which this case must be determined is laid down by the Supreme Court of the United States in Looney v. Metropolitan R. Co., supra, where that court said: 'To hold a master responsible a servant must show that the appliances and instrumentalities furnished him were defective. A defect can not be inferred from the mere fact of an injury. There must be some substantive proof of the negligence. Knowledge of the defect or some omission of duty in regard to it must be shown.'" The facts in the case of Carnegie Steel Co. v. Byers, 149 Fed. 667 (8 L. R. A. (N. S.) 677), make that case directly in point, and the decision in that case concludes as follows: "There was no substantial evidence from which the jury might reasonably find that this accident was due to negligence. Its cause is wrapped in doubt and uncertainty. It may have happened from some cause for which the defendant was not liable or from actionable negligence. It was the duty of the plaintiff to make a case from which a jury might reasonably find negligence."

The case of Courtney v. New York &c. R. Co., 213 Fed. 388, is one where an engineer was filling a locomotive headlight with oil, and an explosion occurred, and injury to the engineer resulted. District Judge Thomas said (p. 390): "The maxim res ipsa loquitur does not apply where the accident might have been due to improper handling as well as to improper furnishing the thing

causing the accident. In the case of Lennon v. Rawitzer, 57 Conn. 583, 587 (19 Atl. 334, 336), the court said: 'But, assuming it to be as cited, there are several conditions which are essential to lay the foundation for any presumption. One is that the thing must be under the management of the defendant or his servants. Here the actual management at the time was controlled by the plaintiff, which would at least require caution in applying the rule, lest the plaintiff's own carelessness be visited on the defendants.'" In Patton v. Public Service Ry. Co., 227 Fed. 210, 813 (142 C. C. A. 334), the circuit judge said: "Recognizing the lack of testimony upon the element of negligence, the plaintiff urged that the case is one in which the maxim of res ipsa loquitur applies. This maxim does not relate to a situation susceptible of proof yet not capable of proof merely because of the absence of witnesses. It applies where the accident itself bespeaks negligence, that is, where the accident is such as to necessarily involve negligence, and for that reason further proof of negligence is not required." In the case of Looney v. Metropolitan Railroad Co., supra, it is said (p. 448): "A presumption in the performance of duty attends the defendant as well as the person killed. It must be overcome by direct evidence. One presumption can not be built upon another. Douglas v. Mitchell, 35 Pa. St. 440; Philadelphia &c. Railway Co. v. Henrice, 92 Pa. St. 431 [37 Am. R. 699]; Yarnell v. Kansas City &c. Railroad Company, 113 Missouri, 570 [21 S. W. 1, 18 L. R. A. 599]."

The nonsuit was properly granted, because the allegations in the petition were not supported by the evidence.

*Judgment adhered to.*