360

24742. SOUTHERN RAILWAY COMPANY *v.* COWAN.

DECIDED JANUARY 9, 1936.

*Neely, Marshall & Greene,* for plaintiff in error.

*Hewlett & Dennis,* contra.

SUTTON, J. R. L. Cowan brought suit against the Southern Railway Company for damages on account of alleged negligence in furnishing to him an unsafe and unfit tool with which to do his work. The case was based on the Federal employer's liability act. The defendant demurred generally and specially to the petition, and to the overruling of the demurrer the defendant excepted pendente lite. The defendant set up that the plaintiff assumed the risk of his employment and that he was guilty of contributory negligence. The trial resulted in a verdict for the plaintiff for $5000. The defendant's motion for new trial was overruled, and it excepted.

1. Cowan was foreman of a section-gang employed by the defendant, a railway company engaged in interstate commerce, in the repair, upkeep, and maintenance of a portion of its road-bed and tracks. On the occasion of the injury Cowan was engaged in wielding a steel hammer or spike-maul, by striking the end of a claw-bar for the purpose of driving it under a spike embedded in a crosstie in order to remove the spike from the tie, when a fragment of the head of the hammer or maul slivered or chipped off its face and struck Cowan in the eye, causing him to lose it. He contended that the hammer was a tool furnished to him by the

railway company, which had repaired and reconditioned it, and on account of such reconditioning it was left in a defective condition in that it was improperly tempered; that he did not know it was defective, and could not have discovered the defect by casual inspection; that it was the duty of the company to furnish him with safe tools, which it failed to do; that a hammer in the condition this one was in was not suitable and fit for the purpose to which it was intended to be used; and that the company was negligent in the reconditioning and in furnishing him a defective and unsafe tool with which to work. Under the allegations of the petition the suit was properly one under Federal employer's liability law. *L. & N. R. Co.* v. *Kemp,* 140 *Ga.* 657 (79 S. E. 558). Every common carrier by rail while engaging in interstate commerce shall be liable in damages for injury to an employee, resulting in whole or in part from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, road-bed, works, boats, wharves, or other equipment. 45 U. S. C. A. § 51. An employee engaged in repair or maintenance work designed to preserve the safe condition of a railroad-track used in whole or in part for interstate commerce is within this section. 45 U. S. C. A. 158, note 226; *L. & N. R. Co.* v. *Kemp,* supra.

In a case brought under the Federal employer's liability law the mere happening of the accident will not warrant a recovery. There is no presumption of negligence against the railroad company or any of its servants, arising from proof only of injury to one of its employees. The act states that the railroad is liable when the injury is due to negligence of any of its officers, agents or servants, or where the injury is the result of the negligence of the company in furnishing tools, appliances, etc. *L. & N. R. Co.* v. *Kemp,* supra; *Williams* v. *W. & A. R. Co.,* 20 *Ga. App.* 726, 729 (93 S. E. 555); *Landrum* v. *W. & A. R. Co.,* 146 *Ga.* 88 (90 S. E. 710); *Southern Ry. Co.* v. *Blackwell,* 20 *Ga. App.* 630 (93 S. E. 321); San Antonio &c. R. Co. *v.* Wagner, 241 U. S. 476 (36 Sup. Ct. 626, 60 L. ed. 1110). Ordinary diligence requires the company to furnish its servant tools reasonably suited for the uses intended. *Williams* v. *Alabama Great Southern R. Co.,* 15 *Ga. App.* 652 (84 S. E. 149). This Federal law does not give a new cause of action which did not exist at common law, but modi-.

fies the common-law rule, under the master and servant doctrine, with respect to the defenses of contributory negligence, assumption of risk, and fellow-servant negligence. The relation of master and servant must be shown between the railroad and the complaining employee. In *Rome Scale Mfg. Co.* v. *Harvey*, 15 *Ga. App.* 381, 385 (83 S. E. 434), it was said: "There is proof that the hammer chipped, and was defective, and that it was furnished by the master, who was chargeable with the duty of inspection." See *Harvey* v. *Rome Scale &c. Co.*, 13 *Ga. App.* 571 (79 S. E. 487); *Maloy* v. *Port Royal &c. Ry. Co.*, 97 *Ga.* 295 (22 S. E. 588); *Williams* v. *Garbutt Lumber Co.*, 132 *Ga.* 221 (64 S. E. 65). The Federal employer's liability act does not affect the master's non-assignable duty to exercise reasonable care in providing reasonably safe tools and appliances to his servant.. While the rule is that the master must exercise ordinary care in furnishing its servant reasonably safe tools to work with, there is no absolute responsibility on the master for the safe condition of the tools furnished. 45 U. S. C. A. 187, note 292; B. & O. R. Co. v. Carroll, 280 U. S. 491 (50 Sup. Ct. 182, 74 L. ed. 279); S. A. L. Ry. Co. v. Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). The railroad company is not an insurer of the safety of its employees. (Renn v. S. A. L. Ry. Co., 170 N. C. 128, 86 S. E. 964); but the employee has a right to assume that the company has furnished him with a reasonably safe tool with which to do his work. Wichita Falls &c. Ry. Co. v. Davern, 74 Okla. 151 (177 Pac. 909). And where the company, with knowledge either actual or constructive, furnishes a tool that is unsafe, the servant does not assume the risk, unless the defect is so patent or obvious that any man of ordinary prudence would discover it on casual observation.

The defendant in this case contends that the tool furnished to the plaintiff employee was a simple tool, and that it was not its duty to inspect it. Counsel state that in the case of simple tools, where a master has performed his initial duty of using ordinary care to furnish his servant with a safe tool, the master may rely on the servant to discover and warn him of defects. Swaim v. Chicago &c. Ry. Co., 187 Iowa, 466 (174 N. W. 384). The defendant contends that the principle that it is not the duty of the master to inspect simple tools, where the defect is necessarily

obvious, is applicable and controlling in this case. Ft. Smith &c. R. Co. v. Holcombe, 59 Okla. 54 (158 Pac. 633). The general rule in master and servant cases is that the duty of the master in furnishing the servant with safe tools does not apply to simple tools in common use, with which the master and servant are equally familiar. 39 C. J. 342. However, the Federal law above, making the employer liable for injury to an employee through a defect, due to its negligence, in its appliances and equipment, embraces simple as well as complex tools. Gekas v. Oregon-Washington R. Co., 75 Or. 243 (146 Pac. 670); Cole v. S. A. L. Ry. Co., 199 N. C. 389 (154 S. E. 682). Where a simple tool is defective, and the employer has actual or constructive knowledge of the defect, and the employee has not, the employer is liable. Ft. Smith &c. R. Co. v. Holcombe, supra; 39 C. J. 763, note 72. It can not be said as a matter of law, without reference to the use made of it, that because a hammer or maul is a simple tool the master, when furnishing it to his servant, does not owe to him the duty to use ordinary care to see that such tool is reasonably suitable and safe to use in the work to be done. Hines v. Flinn (Tex. Civ. App.), 222 S. W. 679. The reason usually assigned for the "simple-tool doctrine" is that the defects and dangers inherent in the use of the defective tools and appliances are obvious, and that the servant has an equal or better opportunity than the master to learn of such defects and to comprehend the risks of injury therefrom. 39 C. J. 762. While it is true that it is the duty of the master to exercise ordinary care in furnishing safe tools to work with, still, if the tool furnished is not safe and the servant knows of it, he assumes the risks incident to its use; and if injured, the master would not be liable. Young v. Norfolk &c. Ry. Co., 171 Ky. 510 (188 S. W. 621); Swaim v. Chicago &c. Ry. Co., supra. It is true therefore that a section-hand assumes the risk of injury from steel slivers flying from a hammer used for driving railroad-spikes, the same being a simple tool, and there being no question of the negligence of the railroad involved. See York v. Rockcastle River Ry. Co., 215 Ky. 11 (284 S. W. 79); Tanner v. L. & N. R. Co., 45 Ga. App. 734 (165 S. E. 761); Georgia R. &c. Co. v. Nelms, 83 Ga. 70 (9 S. E. 1049, 20 Am. St. R. 308), where it was held that the burden was on the servant to show negligence on the part of the railroad company in furnishing him with a defective ham-

mer, and that the mere fact that the hammer furnished and other hammers were defective and that injury resulted from their use was not sufficient to authorize an inference of negligence on the part of the company. The *Nelms* case was decided before the enactment of the first Federal employer's liability statute. In the *Nelms* case a hammer was recognized as a simple tool or appliance. See *Fisher* v. *Ga. N. Ry. Co.*, 35 *Ga. App.* 733 (134 S. E. 827); *Banks* v. *Schofield's Sons Co.*, 126 *Ga.* 667 (55 S. E. 939).

However, we have in this case an action predicated on the negligence of the master in furnishing an unsafe tool, due to the fact that it took a simple tool, a steel maul, and had it repaired, and, in so repairing it, either improperly tempered it or left it without temper, and thereby made it unsafe and unfitted to be used as a hammer; that the master failed to use ordinary care in so doing; that the servant had no knowledge of this condition of the hammer, and the defect was such as was not obvious; but that the master was chargeable with knowledge of its unsafe condition, in that it repaired or reconditioned the hammer or spike-maul, and was guilty of negligence in this respect. We have then a case based on negligence on the part of the master, with knowledge, actual or constructive, on its part of the defect in the tool, and of a servant that did not know of the defective condition and could not discover it by ordinary or casual observation. It has been held that where a railroad company furnished its servant with a steel spike-maul, it could not escape liability for injury received by the servant from the slivering of the maul, on the ground that it was under no duty of inspection to determine whether the maul was properly tempered; for that fact could not be readily determined by the servant, but might be determined by the master by a simple test. In such a case the question whether the company was negligent in furnishing a defective maul was held properly for the jury. The court held in that case that where the company was negligent in furnishing its servant an unsafe tool, there was no assumption of risk by the servant of injuries from the use of such tool. *Crader v. St. Louis &c. R. Co.*, 185 Mo. App. 526 (164 S. W. 678). In *Gately v. St. Louis &c. R. Co.*, 332 Mo. 1 (56 S. W. (2d) 54), it was held that whether the servant assumed the risk of the defective condition of a steel lever bar, a simple tool, was a question for the jury under the Federal employer's liability

act. The court held that the simple-tool doctrine was inapplicable where a steel lever-bar broke and caused the injury to a servant on account of its being improperly tempered by the railroad company; and stated that though the tool was a simple one, the defect therein was not observable or discoverable by inspection such as the workman using it could reasonably be expected to make, even if he were charged with the duty of making such inspection. That case was based on the negligence of the blacksmith who repaired the tool, which was held chargeable to the railroad company. In Swaim v. Chicago &c. Ry. Co., supra, it was held that as to a simple tool furnished by the master there is no presumption that the servant assumes any risk arising from the master's negligence in connection with furnishing an unsafe or defective tool; and that such servant does not assume the risk of the master's negligence in this particular. The court stated that the rule requiring the exercise of reasonable care to furnish reasonably safe tools extends to simple tools.

In Chicago &c. Ry. Co. v. Payne, 141 Ark. 617 (217 S. W. 810), it was held that a case was made for the jury, where the servant was injured by a defective iron maul, where the defect could not be discovered without taking the maul off the handle, there being no affirmative duty on the servant to inspect a tool to discover defects not so obvious as to be naturally observable; and that where a master negligently furnishes a tool that is unsafe, the servant does not assume the risk, unless the defect is so open that any man of ordinary prudence would discover it on casual observation. In Hines v. Flinn, supra, it was held that if there was nothing to indicate to an injured section foreman that the temper of a maul had been changed since it was furnished to him, or that he knew the dangerous condition in which it was because not properly tempered, he was under no duty to send it to the blacksmith-shop to be properly tempered, according to the rules of his employer; that the duty of furnishing a safe maul for use in his work by its section foreman is a non-delegable duty of a railroad company, of which it can not relieve itself by charging the foreman with its performance; that the maul being a simple tool would not prevent the company from being required to use ordinary care to furnish the foreman with a reasonably safe tool to work with; that where such foreman was holding a chisel and

one of the section hands was striking it with the maul in order to repair a part of the railroad-track, and when the maul struck the chisel a piece of steel slivered off and put out the foreman's eye, the question of the negligence of the company in furnishing an unsafe tool was for the jury; and that if the company was negligent in furnishing to its section foreman and men an untempered hammer, unsafe in the particular work, a defect which in the exercise of ordinary care would not have come to the foreman's knowledge, the company could not escape liability on any theory that the section foreman assumed the risk. In Morris *v.* Missouri Pac. R. Co., 107 Neb. 788 (187 N. W. 130), the servant was injured by being struck in the eye with a chip of steel from a maul, and brought suit against the railroad company for furnishing its servants an unsafe tool with which to work, resulting in his injury when he was using it in the course of his employment and in a use that the tool was adapted to. It was alleged that the company knew or should have known of the defective condition of the tool. The court held, that the case was for the jury; that a master must use ordinary care in furnishing such a tool; that the jury could find that the master was negligent in furnishing such tool to the servant; that a maul that would chip off as this one did was not suitable to be used, but was improperly tempered; and that it was for the jury to decide whether the master was negligent. So the rule seems to be that the servant or employee assumes the risks of his employment where simple tools are furnished for use; still where the master is negligent in furnishing defective simple tools, the servant does not assume the risk of the master's negligence. It is true that the burden was on the servant to show that the master had actual or constructive knowledge of the defective condition of the tool; and where it appears that the master reconditioned a simple tool for use and improperly tempered it or left it without being properly tempered, a jury is authorized to find that the master had knowledge of its defective condition. It follows that the petition in this case set out a cause of action for submission to the jury, and that the judge properly overruled the general demurrer. The grounds of special demurrer are not meritorious, and do not require a reversal of the judgment. The petition making a jury case, and the plaintiff having substantially proved the case as laid, the verdict was not without evi-

dence to support it, and was not contrary to law on the ground that the plaintiff assumed the risk of his employment in using the steel hammer or maul furnished him by the railroad company, and that his injury was due to such assumption of risk rather than to the negligence alleged.

2. The court did not err in refusing a request to charge the jury as follows: "I charge you . . that under the employer's liability act of Congress a railroad company is not chargeable with negligence by proof of mere defect in the appliance, but actual or constructive notice of such defect must be shown by the plaintiff. I charge you, therefore, that even if you should find from the evidence that there was a defect in the hammer, but that the defendant had no notice thereof, either actual or constructive, the plaintiff would not be entitled to recover." Before a new trial will be granted for refusal to give in charge a requested instruction, it must not only embody a correct and accurate statement of the law but must be applicable to the issues raised by the pleadings and the evidence. The issue here was negligence. If the defendant was negligent in furnishing the hammer to the plaintiff, in that the defendant had reconditioned it and had left it without temper or had failed properly to temper it, then the plaintiff would not assume the risk of using it in the manner and for the purpose intended, where the defect was not so obvious as to be naturally observable without an inspection. The defendant would be negligent if it furnished to the plaintiff an unsafe and unfit tool with which to work, even though the tool was a simple one, if it knew of the defect therein, and if the employee did not know thereof, and the defect was not plainly obvious; and if the defendant took this hammer and reconditioned it and thereby rendered it unfit for use, a jury would be authorized to find that it had knowledge of its unsafe and unfit condition. See Baker v. United Iron Works, 90 Kan. 430 (133 Pac. 737) ; Caldwell-Watson Foundry &c. Co. v. Watson, 183 Ala. 326 (62 So. 859) ; 39 C. J. 434. The defendant could not place the duty of ascertaining the defectiveness of the tool upon the plaintiff, where it actually reconditioned the hammer and thereby rendered it unsafe. It could not in this manner delegate the duty of ascertaining the unsafe condition of the tool. Furthermore, the judge properly charged on the question of the relationship of the doctrine of the assumption of risk by a servant to the issues raised in this case.

3. The judge did not err in permitting a witness for the plaintiff, who had qualified as an expert blacksmith with knowledge of the properties of steel and the process of tempering steel tools, to testify that a steel hammer with a crack in it like this one shows that it is not suitable· to be used as such tool. Nor was it error to permit the witness to state whether in his opinion, from the appearance of the hammer, it had been properly tempered or not. "In a personal-injury action by a servant whose eye was destroyed by a sliver from a pin-maul which was struck by a sledge, evidence of the opinion of a blacksmith of long experience as to the tempering of the maul, and its suitability for the work in question, is admissible, the blacksmith having qualified as an expert, and the case being one calling for opinion evidence." Crader *v.* St. Louis &c. R. Co., supra. See also Code of 1933, §§ 38-1708, 38-1710; *Crawford* v. *Georgia Pacific Ry. Co.,* 86 *Ga.* 5, 9 (12 S.' E. 176).

4. · It was not error to exclude testimony of other railroad section foremen that they had seen particles from steel mauls sliver off when being used, without confining the testimony to the same kind of spike maul, that is a reconditioned spike maul, and being used in the same way as the one in the case at bar was being used when the injury in question occurred.

5. There was no error in refusing to admit the unsigned statements written by the claim adjuster of the defendant, and claimed by him to contain what the plaintiff told him about the occurrence when he visited him in the hospital, where the plaintiff had not signed these statements. Especially is this true where the witness was permitted to testify as to the contents of these papers.

6. "A witness may refresh and assist his memory by the use of any written instrument or memorandum; provided he finally shall speak from his recollection thus refreshed, or shall be willing to swear positively from the paper." Code of 1933, § 38-1707. "A witness may, for the purpose of refreshing his recollection, use any memorandum useful for that purpose; and his testimony will not be objectionable if it is not dependent upon the memorandum, but is based upon the memory of the witness, even though the memorandum may be necessary in order to refresh his recollection." *A. C. L. R. Co.* v. *Hill,* 12 *Ga. App.* 392 (6) (77 S. E. 316). Under these principles, the testimony of Dr. Jackson was not admissible. He was unable to testify independently of the card, after having

refreshed his memory therefrom; and the card was not admissible, because the witness did not go far enough and state that he usually made true and correct records, and that he could then testify as to the truth or correctness of the card. *Stansall* v. *Columbian National Life Insurance Co.*, 32 *Ga. App.* 87, 90 (122 S. E. 733).

7. There was no error in refusing to declare a mistrial on the ground that the plaintiff's counsel improperly argued certain matters before the jury, in view of the express withdrawal of the statements by the counsel, and in view of the instructions by the court with reference to them.

8. A new trial should not be granted because the effect of a certain excerpt from the charge was to place the burden on the defendant of proving its contentions; that is, the defenses of contributory negligence and assumption of risk. Ordinarily in master and servant cases the burden would be on the plaintiff servant as to such matters; but under the Federal employer's liability act the rule is different. The burden in this respect is on the defendant; and this charge was not error for the reason assigned.

9. The court properly charged the jury on the doctrine of the assumption of risk as applicable to this case. The charge that "an employee does not assume the risk of injury from the negligence of other employees" was not error in that it was not qualified by the statement "until such negligence on the part of other employees became known to the plaintiff, or in the exercise of ordinary care should have been known to the plaintiff." There was no issue that the plaintiff was injured by the negligence of a fellow servant; but the question was whether the defendant itself was negligent in furnishing to the plaintiff an unsafe tool with which to do his work, in that it took a simple tool and had it reconditioned, and did so improperly and thereby rendered the tool unsafe and unfit for use.

10. Under the facts the court properly charged that "one of the duties imposed by law upon the master is that it must use ordinary care in furnishing its servants with reasonably safe appliances with which to work. Another duty owing by the master to the servant is the duty of using ordinary care in the reasonable inspection of the instrumentalities furnished its servants." The authorities cited in the first division hereof show that the simple tool doctrine in its entirety was not applicable where the case was

predicated on the negligence of the master in furnishing an unsafe tool, in that it took the tool and reconditioned it and thereby rendered it unsafe either by improperly tempering it or by leaving it untempered. The master was not relieved of its duty to furnish its servant with a reasonably safe tool when it took this tool and repaired or reconditioned it.

11. There was no error requiring the grant of a new trial in the charge on the subject of arriving at the present cash value of the plaintiff's loss of services.

12. No error of law appearing, and the evidence authorizing the verdict in favor of the plaintiff, the judge properly overruled the motion for new trial.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*