**HINRICHS v. TEXAS & N. O. R. CO.**

No. 14248.

Court of Civil Appeals of Texas.
Fort Worth.

June 6, 1941.

Rehearing Denied Sept. 5, 1941.

Lloyd E. Price, Joseph F. Greathouse, and Hamilton Rogers, all of Fort Worth, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Thompson & Barwise and Seth Barwise, all of Fort Worth, for appellee.

SPEER, Justice.

J. J. Hinrichs instituted this suit against Texas & New Orleans Railroad Company for damages sustained when defendant's train collided with plaintiff's automobile on February 5th, 1938, at a junction on Berry Street, in the City of Fort Worth, Texas.

Several acts of negligence against defendant were alleged. By its verdict the jury convicted defendant of operating its train, at the time and place, at a rate of speed in violation of the City Ordinance, proximately causing the collision. From the accident plaintiff sustained serious injuries.

Plaintiff and his wife were riding in the automobile, at the time of the collision. They were both on the front seat, the wife sat on the left hand side and was driving. In answering special issues, the jury found that plaintiff and his wife were guilty of contributory negligence, proximately causing the collision, in the following particulars: (a) The wife failed to discover the approaching train at such time as that by the exercise of ordinary care she could have operated the automobile in such a way as to avoid the collision; (b) both plaintiff and his wife failed to listen for the whistle of defendant's locomotive as it approached the crossing; (c) both failed to listen for the bell on said locomotive as it approached the crossing; (d) they both

failed to listen for the noise of defendant's train as it approached the place of the collision; and (e) they failed to keep a proper lookout for the approach of the train at the time and place. Judgment was entered for defendant on the verdict. From that judgment plaintiff has appealed.

The only question presented by appellant (J. J. Hinrichs, the plaintiff below) for a reversal, is the alleged improper admission in evidence of a written statement admittedly written by Mr. McNamara, claim agent for appellee (Railroad Company).

The facts surrounding the writing of the offending instrument are these: On about March 15th, after the accident, the claim agent went to the home of appellant, as stated by him, to procure a statement from appellant and his wife as to how the collision happened. Appellant was in bed with a steel brace on his neck and the claim agent talked principally to the wife, in the presence of appellant. The conversation lasted about an hour and a half, during which time the claim agent wrote with a pen on note paper, the instrument which was introduced in evidence, over the objections of appellant.

Mrs. Hinrichs testified that she refused to sign the statement, and Mr. McNamara testified that before he left the home, Mrs. Hinrichs wanted to make a typewritten copy of the statement, and said that she would then sign and return it to him.

On March 21st, following the interview, Mrs. Hinrichs returned the statement, after making some alterations in it with a pencil, accompanied by a letter, which reads: "My dear Mr. McNamara: After you left the other day, Mr. Hinrichs and I carefully read and considered the statement you had written and were at a loss as to what to do. Having told you to the best of our ability then what we remembered, we could not see the necessity of a signed statement at that time. Finally we called a lawyer friend of ours, Mr. Lloyd Price, and he advised us against signing anything. Since then we have talked further with Mr. Price and have decided to let him help us in the matter. We are taking your advice and endeavoring to collect from the insurance company as soon as possible. I am sure you realize our position and appreciate the step we have taken. Mr. Hinrichs and I do want to thank you for your personal consideration, interest and kindness. Very sincerely yours." (Signed by Mrs. Hinrichs).

After Mrs. Hinrichs had testified at length concerning what happened at the time of the accident, counsel for appellee, on cross examination, inquired about the visit of the claim agent to her home and the statement written at the time by him. She recognized the written document and said it was the one she had refused to sign; that she did retain it for several days and tried to correct it; that she marked across some things in it and interlined some; that she tried to correct it so that it would speak the truth but found she could not do so and after some changes on third and fourth pages, gave it up on the fifth page, finding that it could not be corrected and, to be courteous to the claim agent, sent it back to him unsigned; she said she could not sign it in the condition it was in, nor could she correct it so as to make it speak the truth.

Counsel then took the statement, and selected many parts of it as written and asked Mrs. Hinrichs if she made those statements to Mr. McNamara at the time of their conversation. She said in most instances that she did not remember if she told him those things, but upon further inquiry by counsel, she often said the things inquired about were true. In some instances she denied having told the claim agent the things he had written, and said they were not in fact true. Virtually all of the statements contained in the instrument which tended to reveal contributory negligence on the witness' part were denied by her and in addition to denying having made the statements, she said they were not true as existing facts. When certain interlineations were pointed out to her she said she made them in an effort to make the statement speak the truth, found she could not do so, and quit making changes and sent it back because she could not sign what was written nor could she correct it so that it would speak the truth.

Insofar as is necessary to relate the testimony of Mr. McNamara, it is, substantially, that he went to the home of plaintiff to talk with him and his wife and ascertain the facts about how the accident happened and to take a statement from them about it. That he had been a claim agent for appellee 29 years and had investigated many claims; that in talking with Mrs. Hinrichs he only wanted the facts and had no interest in prejudicing the case either way; he wrote the statement out during the time he was at the Hinrichs home; that Mrs. Hinrichs used a typewriter and wanted to

make a copy of the statement and he left it with her for that purpose; when copied it was to be signed and returned to him; when it was returned with the letter above set out it had the pencil interlineations shown but was not signed. Mr. McNamara further testified that during the conversation with Mrs. Hinrichs and in the presence of Mr. Hinrichs, he took a statement from her, and wrote down what they said at the time. The written statement, which is the subject of complaint before us, was exhibited to Mr. McNamara and he identified it as the one written by himself at the time he was talking to Mr. and Mrs. Hinrichs; that one or both of them told him the things that were written in the document, and that it was read over to them when he finished it. He said the pen written part represented what he was told by Mr. and Mrs. Hinrichs at the time.

Appellee was then permitted by the court, over appellant's objections, to offer the statement in evidence. There were a dozen or more objections urged by appellant to the introduction in evidence of the written statement. The objections urged were sufficient to put in issue the action of the court in overruling them and in permitting the statement to go to the jury.

We have concluded that the admission in evidence of the written statement was error and requires a reversal of the judgment entered.

An extensive discussion of the rules of evidence would be inappropriate here. We need only to refer to those applicable to facts before us. It will be borne in mind that the claim agent wrote the statement (except the few interlineations made by Mrs. Hinrichs in an effort to make it speak the truth, but found she could not do so, and gave it up), it was not signed nor ratified by appellant or his wife, and, as we view it, never became their statement or declaration. It did contain many things incidental to the accident, such as that Mrs. Hinrichs was the wife of appellant, was 33 years old, appellant was a teacher of foreign languages in Texas Christian University, that appellant and his wife were in their automobile and the wife was driving on Berry Street, at about eleven o'clock at night, when the accident happened. These matters, while admitted by Mrs. Hinrichs to be true, were not the issues in controversy. As stated above, the document further purported to show acts of contributory negligence on the occasion in question, and Mrs. Hinrichs denied making the statements and declared they were untrue. She explained, in her testimony, that for these reasons the statement as a whole was "only half true".

■ We know of no rule of law by which a statement written by another, as was this one, not only not ratified but denied and unsigned by the one against whom it is sought to be introduced, can be placed in evidence to establish the facts therein contained. The general rule of evidence in such matters seems to be that a writing of itself is not evidence, but it must be accompanied by proof of some sort, to the effect that the person sought to be charged by it, executed it or authorized its execution. 17 Tex.Jur. p. 684, § 291; Id., p. 700, § 299. In Stroud v. Springfield, 28 Tex. 649, it was held, with certain exceptions applicable to ancient instruments, the fundamental rule of evidence in this state is that private writings must be proved to be genuine before they can be admitted in evidence.

In Massachusetts Bonding & Ins. Co. v. LeMay, Tex.Civ.App., 28 S.W.2d 259, writ dismissed, it was held that a part of what purported to be a former pleading of one of the parties was not admissible in evidence, in the absence of proof that it was written or signed by the party sought to be bound by it, or by some person authorized to so execute it; citing 10 R.C.L. p. 1094.

In Castelo et al. v. Castelo, Tex.Civ.App., 89 S.W.2d 1033, writ dismissed, it was held that a letter purporting to be from a party sought to be charged with its contents, was not admissible in evidence when it appeared that he could not write and there was no proof that the person who wrote it was authorized to do so.

■ It is a well settled rule of law in this state that statements against interest, made by a party to a suit, may be introduced in evidence by the opposing party when the subject matter of the statements is involved in the suit. Another rule is as well settled; i. e., when a witness testifies to a state of facts, on cross examination he may be questioned as to former contradictory statements made by him. If the witness denies having made the contradictory statements at the time, place and to the person designated in the inquiry, opposing party may prove by any competent witness, the conflicting statements, for the purpose of discrediting the testimony of the witness. But we do not understand the rule to go so far as to permit the party who offers

the conflicting evidence to corroborate that testimony by a written statement made wholly by his witness.

■ What was said by the Supreme Court of Arkansas in Louisiana & A. Ry. Co. v. Woodson, 127 Ark. 323, 192 S.W. 174, 176, announces what we believe to be a correct rule. In that case a claim agent reduced to writing an oral statement made to him by the plaintiff and the agent was permitted to testify to its contents. The trial court offered to permit the witness to refresh his memory, from the data written by him, but refused to permit the introduction of the writing in evidence. The court held that when the defendant's agent was permitted to testify as to the statements made to him by plaintiff, and the trial court had offered to permit him to refresh his memory from his writing, the doctrine was carried far enough. In this connection the court said: "It certainly would be a novel precedent to allow interested parties to take an oral statement in writing from an injured party and use it against him in the trial of a cause as his solemn written admission." A similar rule was announced in Southern Ry. Co. v. Cowan, 52 Ga.App. 360, 183 S.E. 331. In the instant case we have the agent of appellee stating that Mrs. Hinrichs made certain statements to him prior to the trial of the case and Mrs. Hinrichs is denying having made them. The appellee seeks to corroborate the testimony of its agent by introducing in evidence what the agent wrote at the time of the conversation between the witnesses. We have been cited to no rule of law in support of such a theory, and we have been unable to find such.

As we gather from appellee's brief, it contends the written statement was properly admitted in evidence upon the theory that even though the document was written by its agent, it was left with Mr. and Mrs. Hinrichs to read over, copy and sign; that when it was returned unsigned, the .fact that they had made corrections in it by striking out parts and interlining other parts, it thereby became their solemn written declaration. Several cases are cited in support of the contention. We do not so construe the authorities cited. In the brief of appellee it is said that the clearest case on the point they had been able to find was that of Larkin v. Nassau Electric R. Co., 205 N.Y. 267, 98 N.E. 465, 466. In that case an oral statement of a witness was reduced to writing by another in his presence, and was signed by the one purporting to make the statement contained in the writing. The witness admitted his signature to the writing, and it was held this was sufficient to warrant the introduction of the document in evidence, as that of the witness. That court announced the rule recognized in many jurisdictions, in this language: "Any statement of a witness made out of court, orally or in writing, if contradictory of a material part of his testimony, may be, if properly proven, introduced in evidence, not as substantive proof of the truth of such statement, but as tending to discredit him." Under the facts revealed in that case, we find no fault with conclusions reached.

■ Appellant urges, under other propositions, that since Mrs. Hinrichs was not a party plaintiff with her husband in this case, her statements were not admissible in evidence against the husband. We think there is no merit in this contention. The recovery would have been community property and she had as much interest in the outcome of the case as did her husband. Her interest would not have been increased by including her name as a party plaintiff. Simpson v. Brotherton, 62 Tex. 170; Houston & T. C. Ry. Co. v. Terrell, 69 Tex. 650, 7 S.W. 670; Loper v. Western Union Tel. Co., 70 Tex. 689, 8 S.W. 600; Gallagher v. Bowie, 66 Tex. 265, 17 S.W. 407.

For the error shown in the admission in evidence of the written statement made by the claim agent, the judgment of the trial court will be reversed and the cause remanded. It is accordingly so ordered.

### On Motion for Rehearing.

Appellee, railway company, has filed a vigorous motion for rehearing, in which it complains of our order reversing and remanding this case. The court pays itself no compliment when it becomes necessary to explain what is meant by language used in an opinion. Counsel has evidently misconstrued our holding and we cannot let their contentions go unchallenged. It is asserted that we erred in holding: "That the statements of appellant's wife made to appellee's claim agent, McNamara, relating to the facts of the accident, should not have been received in evidence by the trial court."

The quoted statement being a part of one of the errors complained of in the opinion, cannot be supported by the record. The trial court did permit appellee to prove by McNamara what he claims Mrs. Hin-

richs said about the accident; this was proper for it tended to contradict her testimony given upon the trial. But it was the introduction in evidence by appellee of the statement written by McNamara that we held to be improper.

As a part of the assigned error to this court it is stated in the motion that, "it further appears from the undisputed evidence that a long discussion took place in the presence of both the appellant and his wife and that during the discussion the claim agent wrote down what appellant's wife told him and the claim agent testified that after reading the statement over to both of them the appellant's wife admitted that it was left with her to typewrite and return to appellee, the truth of which statement she did not challenge or deny * * * and where the appellant's wife did not deny on the witness stand that she had told the claim agent the matters he wrote down * * *."

It is argued that the trial court committed no error in admitting the writing in evidence, and that we were in error in holding that it did so. The statement of facts before us consists of two large volumes and much of it is taken up with a meticulous cross examination of Mrs. Hinrichs by inquiries about practically every expression found in the statement. She denied making many of the material and damaging ones and said they were not true as facts; pressed by the examiner in some instances, she used rather strong language in her denials. She repeatedly said she declined to sign the statement because it was not true, or was only half true. In such circumstances the record does not support the quoted language of counsel where it is stated that the undisputed evidence shows so and so, and that Mrs. Hinrichs did not deny on the stand that she had told the claim agent the matters he wrote down, nor does it support counsel's assertions to the effect that the undisputed evidence shows that the claim agent wrote down what appellant's wife told him. As we construe the testimony of Mrs. Hinrichs, she denied having told the claim agent several of the material matters found in the written statement, and also denied that they were true.

It may be conceded that she recognized the written statement when presented to her upon the trial, but she insisted that it was the same one that she had refused to sign. Under such conditions as presented here, it cannot be said that the written statement was, as a matter of fact and law, that of the witness Mrs. Hinrichs, by which she could be impeached or contradicted upon the trial when she had testified to a state of facts different from that contained in the written statement.

It is contended that we are in conflict with the holdings in Kampmann v. Cross, Tex.Civ.App., 194 S.W. 437, writ refused; Faseler v. Kothman, Tex.Civ.App., 70 S.W. 321; and Campbell v. McLaughlin, Tex. Com.App., 280 S.W. 189. We have carefully studied those cases and under the facts there discussed, a distinction is apparent from the facts before us in the instant case. With all deference due to counsel's earnest insistence, we believe we have properly disposed of the controlling issue involved. The motion is therefore overruled.