**ATLANTIC COAST LINE R. CO. v. SWEAT.**

No. 12944.

United States Court of Appeals, Fifth Circuit.

June 9, 1950.

Asa D. Kelley, Jr., H. H. Perry, Jr., Albany, Ga., for appellant.

S. B. Lippitt, Albany, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This was an action brought by appellee as administratrix of the estate of her deceased husband under the Federal Employers' Liability Act and the Boiler Inspection Act[1] to recover damages for injuries to and death of her husband. At the time of receiving his injuries appellee's husband, W. V. Sweat, was employed by appellant as an engineer. The parties will be referred to as they were designated in the trial court.

1. Respectively 45 U.S.C.A. § 51 et seq., and 45 U.S.C.A. § 23 et seq.

It is alleged in plaintiff's complaint that decedent was on November 4, 1947, engaged in the operation of a freight train designated as First No. 207; that train No. 207, upon which decedent was riding in the performance of his regular duties as engineer, was proceeding from Albany, Georgia en route to Waycross, Georgia, and upon reaching a point about eighteen miles south of Albany, Georgia, the boiler of said engine exploded, killing Sweat. The negligence pleaded is that the locomotive was unsafe because defendant did allow a piece of waste to get into the water tank which obstructed the flow of water to the pump on the locomotive at least seventy-five percent thereby preventing the pump from delivering sufficient water to the boiler. In addition it is alleged that the defendant did equip the locomotive with a defective water injector which failed to function in that it did not deliver sufficient water to the boiler of the engine; and that each or both of the above negligent acts would and did cause the water in the boiler to become low, and allow the crown sheet to become overheated, and the boiler then and there did explode.

Defendant's answer admits that decedent was in its employ at the time of receiving his injuries and that he died as a result of injuries sustained when the crown sheet in the boiler of the engine gave way from heat as a result of low water in the boiler, but it alleges that the circumstance of low water in the boiler was due solely to the negligence of decedent and denies that there was any negligence on its part. In connection with the charges of negligence, defendant's answer points out that the locomotive was equipped with two systems or devices which were designed for the purpose of delivering or transferring water from the water tank to the boiler. One of these systems being known as a Worthington 6SA Feed Water Heating System, commonly referred to as the water pump, and the other known as a Sellers U. S. Standard Type B Non-Lifting Injector, and that either or both of these systems are capable when operated to capacity of supplying a sufficient amount of water to the locomotive boiler to prevent water in the boiler from getting below the highest point of the crown sheet. It alleges that the pump is the instrumentality usually employed for the purpose of supplying the boiler with water—the injector being generally used only when the pump for any reason fails to supply the boiler with sufficient water. The answer admits that the locomotive was examined after the accident by inspectors of the Interstate Commerce Commission, and that in examining the pump system, a small piece of waste cotton was found lodged against the nut on the strainer in the cold water pump which was perhaps capable of impeding, to some extent, the flow of water from the water tank into the boiler through the pump, but defendant denies that said waste cotton was capable of and did in fact impede the flow of water to the extent of seventy-five percent of its normal capacity as alleged.

The case was submitted to the jury on instructions to which no exceptions were taken, and the jury returned a general verdict in favor of plaintiff. From the judgment based on this verdict defendant appeals, seeking reversal on the sole ground that the court erred in permitting expert witnesses to testify that in their opinions a locomotive is not in a safe and proper condition if in the strainer to the water pump there is found, as described in the evidence, a piece of waste of the size of a man's hand.

Conceding that the witnesses Slappey, Huckabee and Gray—the fireman, inspector of the Interstate Commerce Commission, and defendant's shop foreman respectively—were experts in the make up and operation of locomotives, defendant insists that there was no necessity for the introduction of the opinions of experts in the present case since all of the relevant facts were in evidence and the jury was competent to decide without the opinion of experts whether or not the locomotive was in a safe and proper condition. In addition it is urged that the opinions elicited were inadmissible in that they did not involve matters peculiarly and exclusively within the intelligence of experts in the operation of a locomotive but related solely

to the ultimate issue before the jury as to whether or not because of the existence of waste in the strainer to the cold water pump the locomotive was in proper or safe condition as provided for in the Boiler Inspection Act. We cannot agree with appellants that there is merit in either of the matters urged.

Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides in part as follows: "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, *or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.* In any case, *the statute or rule which favors the reception of the evidence governs* and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. *The competency of a witness to testify shall be determined in like manner.*" (Emphasis supplied.)

Georgia has a statute admitting the opinions of expert witnesses. This statute provides as follows: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." (Ga. Code Ann. § 38-1710)

Under Georgia law the qualifications of an expert are addressed to the sound discretion of the court.[2] Their opinions, on questions of science, skill, trade, or like questions, shall always be admissible provided they are based on facts supported by other witnesses and the weight thereof is a question for the jury,[3] to deal with as they see fit, giving credence to it or not.[4] In each of the three instances when the Court over defendant's objection admitted the testimony of an expert, the court in its ruling was careful to state that the evidence was being admitted as the opinion of an expert to be given such weight and credit, if any, as the jury might see fit to give to it. And this direction was reiterated and amplified in the Court's full and complete charge to the jury.

We are of the opinion that the Court did not err in respect to the admission of this evidence. The witnesses were acknowledged experts in the make up and operation of a locomotive and their opinions were based on proven facts, and were admissible under the Code.[5] The judgment appealed from is therefore affirmed.

2. Hines v. Hendricks, 25 Ga.App. 682, 688, 104 S.E. 520; Western & Atlantic Railroad v. Fowler, 77 Ga.App. 206, 225, 47 S.E.2d 874.

3. McClendon v. State, 7 Ga.App. 784, 68 S.E. 331.

4. Ocean Accident & Guarantee Corporation v. Lane, 64 Ga.App. 149, 12 S.E.2d 413.

5. Hilliard v. King, 134 Ga. 817(2), 68 S.E. 649; Crawford v. Georgia P. Railway Co., 86 Ga. 5, 8, 12 S.E. 176; Southern Railway Company v. Cowan, 52 Ga.App. 360, 368, 183 S.E. 331; Southern Railway Company v. Wessinger, 32 Ga.App. 551, 554, 124 S.E. 100.